OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 This appeal concerns claims of negligence per se and fraud based on alleged misconduct by notaries public. Appellants Leonard and Shelly Torrealba filed a complaint for damages
 
 *98
 
 against two notaries public, respondents Laurie Kesmetis and Emily Herrera, and the notaries’ employer, respondent J.M.K. Investments, Ltd., claiming that the notaries were negligent as a matter of law under regulatory statutes governing notaries public and that they fraudulently notarized the Torrealbas’ signatures on certain loan documents. The district court dismissed both the negligence per se claim and the fraud claim as time-barred. Today, we consider, first, the statute of limitations applicable to claims brought under NRS 240.150, which establishes civil liability and penalties for notary misconduct or neglect. Second, we consider whether instruments recorded but improperly acknowledged provide constructive notice under NRS 111.320 to start the running of the limitations period.
 

 We conclude that claims brought under NRS 240.150(1) and NRS 240.150(2) are claims upon a liability created by statute, other than a penalty or forfeiture, and are subject to a three-year statute of limitations under NRS 11.190(3)(a). Because the Torrealbas’ negligence per se claim is based upon NRS 240.150(l)-(2), we reverse the district court’s order dismissing that claim as time-barred and remand for further proceedings.
 

 Actions for fraud are subject to a three-year statute of limitations under NRS 11.190(3)(d), which commences when the aggrieved party discovers the facts constituting the fraud. Respondents maintain that the Torrealbas had constructive notice of the recorded but improperly acknowledged loan documents at least three years before they commenced their action, resulting in the fraud claim being time-barred. In resolving this issue, we adopt the test articulated by the Supreme Court of Appeals of West Virginia in
 
 In re Williams
 

 [1]
 

 for determining whether a recorded but improperly notarized instrument can impart constructive notice. Under the
 
 Williams
 
 test, an improperly notarized instrument is void, and thus does not provide constructive notice for statute of limitations purposes, if either the notary or any party to the instrument benefited from the improper notarization or any harm flowed from the transaction. In light of our holding, we reverse the district court’s order dismissing the Torrealbas’ fraud claim and remand for further proceedings under the
 
 Williams
 
 test.
 

 FACTS
 

 Beginning in 1997, the Torrealbas invested with respondent J.M.K. Investments, Ltd., with the understanding that J.M.K. would make real estate loans on behalf of the Torrealbas, and name the Torrealbas as lenders. In April 2000, J.M.K. informed the Torrealbas that borrowers on three loans — the Taylor Ranch loan, the Saxton loan, and the Diamond Key Homes loan — were
 
 *99
 
 going to default. On January 7, 2003, the Torrealbas learned that three declarations of agency and limited powers of attorney had been notarized and recorded for those loans. The powers of attorney authorized J.M.K. to sign for the Torrealbas when reconveying the deeds of trust to the borrowers.
 

 The Torrealbas did not sign the powers of attorney for the Taylor Ranch and Saxton loans, nor did they appear in front of notaries to acknowledge their signatures. Laurie Kesmetis and Emily Herrera, notaries hired by J.M.K., notarized the Torrealbas’ signatures on these powers of attorney, and the instruments were recorded in Clark County on February 20, 1998, and May 27, 1999, respectively. With regard to the Diamond Key Homes loan, Leonard Torrealba admitted to signing a document on his and his wife Shelly Torrealba’s behalf, but he asserted that he did not know that the document was a power of attorney and that he did not sign the document in front of a notary. According to the parties, that power of attorney was recorded in Maricopa County, Arizona, on July 20, 2000, but it is unclear who notarized it.
 

 In late January 2003, the Torrealbas filed complaints with the Notary Division of Nevada’s Secretary of State, alleging that Kesmetis and Herrera had improperly notarized their signatures on powers of attorney because they never actually appeared before either Kesmetis or Herrera. The Notary Division’s hearing officer determined that Kesmetis had violated Nevada law by notarizing the Torrealbas’ signatures without requiring them to appear before her, therefore improperly acknowledging their signatures, as well as by failing to maintain a notary journal. The Division fined Kesmetis. Herrera agreed to pay a fine rather than challenge the complaint.
 

 On January 6, 2006, the Torrealbas filed a complaint in the district court against Kesmetis, Herrera, J.M.K., and respondent John Keilly, the president of J.M.K. (collectively, respondents). The Torrealbas alleged two causes of action: negligence per se for violations of NRS 240.075, NRS 240.120, and NRS 240.150; and fraud. The Torrealbas allege that they were injured when J.M.K. improperly reconveyed deeds of trust in which the Torrealbas had an interest. Respondents filed a motion to dismiss, arguing that the statute of limitations barred the Torrealbas’ claim for negligence per se. Treating the motion to dismiss as a summary judgment motion, the district court found that the Torrealbas had constructive notice of the Taylor Ranch power of attorney, the Sax-ton power of attorney, and the Diamond Key Homes power of attorney on the dates when the powers of attorney were recorded. The district court also found that the Torrealbas had actual notice of the Diamond Key Homes power of attorney since Leonard had signed that document. Finally, the district court determined that since the Torrealbas brought both of their claims under NRS Chap
 
 *100
 
 ter 240 and, because the Torrealbas had constructive notice of the three powers of attorney as of the date of their recordation, the claims were time-barred under NRS 11.190(4)(b)’s two-year statute of limitations for actions grounded on a penalty statute. Accordingly, the district court granted the motion and entered summary judgment in favor of respondents. The district court subsequently denied the Torrealbas’ motion for reconsideration. The Torrealbas now appeal.
 

 DISCUSSION
 

 This court reviews a district court’s order granting summary judgment de novo, “to determine whether the evidence properly before the district court ‘demonstrate^] that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.’ ’ ’
 
 [2]
 
 While we construe the facts in the light most favorable to the nonmoving party, we also place the burden on the nonmoving party to “set forth facts demonstrating the existence of a genuine issue in order to withstand a disfavorable summary judgment.’ ’
 
 [3]
 
 Where the nonmoving party would bear the burden of persuasion at trial, “the party moving for summary judgment may satisfy the burden of production by either (1) submitting evidence that negates an essential element of the nonmoving party’s claim, or (2) ‘pointing out . . . that there is an absence of evidence to support the nonmoving party’s case.’ ’ ’
 
 [4]
 
 To successfully defend against a summary judgment motion, “the nonmoving party must transcend the pleadings and, by affidavit or other admissible evidence, introduce specific facts that show a genuine issue of material fact.”
 
 [5]
 

 The Torrealbas’ negligence per se claim
 

 The Torrealbas contend that their negligence per se claim should not be considered “[a]n action upon a statute for a penalty” and therefore should not be subject to NRS 11.190(4)(b)’s two-year statute of limitations. According to the Torrealbas, their action does not involve a statutory penalty because it was brought under NRS 240.150(1) and NRS 240.150(2), neither of which refers to
 
 *101
 
 penalties. Instead, they argue that because NRS 240.150 subsections (1) and (2) create civil liabilities for notary public misconduct or neglect, NRS 11.190(3)(a)’s three-year statute of limitations applicable to “actions upon a liability created by statute” governs their action. We agree.
 

 Statutory interpretation is a question of law that this court reviews de novo.
 
 [6]
 
 We interpret statutes in accordance with their plain meaning and generally do not look beyond the plain language of the statute absent ambiguity.
 
 [7]
 
 Furthermore, “it is the duty of this court, when possible, to interpret provisions within a common statutory scheme ‘harmoniously with one another in accordance with the general purpose of those statutes’ and to avoid unreasonable or absurd results, thereby giving effect to the Legislature’s intent.”
 
 [8]
 

 In determining the statute of limitations applicable to the Torrealbas’ claims, we must characterize the actions authorized under each subsection of the statute. NRS 240.150(1) permits an aggrieved party to bring a claim against a notary on the notary’s official bond based on misconduct or neglect, while NRS 240.150(2) permits an aggrieved party to bring a claim against the notary’s employer for the notary’s misconduct, provided the notary was acting within the scope of his employment and the employer consented to the misconduct.
 
 [9]
 
 NRS 240.150 subsections (3) and
 
 *102
 
 (4) authorize the Secretary of State to discipline a notary public for willful violations of the regulatory scheme by way of fines or revocation or suspension of the notary’s appointment. Subsections (1) and (2) of NRS 240.150 thus authorize claims for damages in favor of an aggrieved party, while subsections (3) and (4) authorize claims in favor of the state to penalize notaries for violations of the notarial code.
 

 Because the nature of the claims authorized under the statute is different, we determine that NRS 240.150 should be bifurcated for purposes of determining the applicable statute of limitations. Claims under NRS 240.150(l)-(2), such as the Torrealbas’ claims, are actions upon a liability created by statute.
 

 ‘“The phrase “liability created by statute” means a liability which would not exist but for the statute. Where a duty exists only by virtue of a statute ... the obligation is one created by statute.’ ”
 
 [10]
 
 In determining that claims based on the misconduct or neglect of a notary are actions upon a liability created by statute, we adopt the reasoning of the Supreme Court of California in
 
 Sonoma County v. Hall.
 

 [11]
 

 There, the court held that an action on the bond of a county recorder who collected fees for official services and failed to pay the county was an action upon a liability created by statute.
 
 [12]
 
 The court explained that the position of county recorder was created by statute, the recorder’s duty to collect and
 
 *103
 
 pay fees prescribed by statute, the amount of the fees fixed by statute, and the recorder’s liability for failure to perform his duty set by statute.
 
 [13]
 
 The court thus applied California’s three-year statute of limitations applicable to actions “ ‘upon a liability created by statute other than a penalty or forfeiture.’ ”
 
 [14]
 
 The court later held that the same reasoning applied to all actions against sureties on the bonds of public officers.
 
 [15]
 

 Similarly here, NRS 240.010 sets forth the Nevada Secretary of State’s authority to appoint notaries public. A notary’s powers are limited by statute,
 
 [16]
 
 and the Secretary of State retains the authority to fine a notary or revoke or suspend a notary’s license.
 
 [17]
 
 Further, to qualify for appointment as a notary, an applicant must file a bond for $10,000 payable to the state
 
 [18]
 
 “to provide indemnification to a person determined to have suffered damage as a result of an act by the notary public which violates a provision of NRS 240.001 to 240.169, inclusive.”
 
 [19]
 
 Because the position, duties, and liability of a notary public are authorized by statute, we determine that a claim on a notary’s official bond under NRS 240.150(1) is an action upon a liability created by statute.
 
 [20]
 
 A claim against a notary’s employer under NRS 240.150(2) is also an action upon a liability created by statute because such a claim would not exist but for the statutory creation of the position of notary as well as the statutory prescription of notarial duties. These claims are, therefore, subject to NRS 11.190(3)(a)’s three-year statute of limitations on “ac
 
 *104
 
 tion[s] upon a liability created by a statute, other than a penalty or forfeiture.’ ’
 

 Although respondents argue that the Torrealbas’ claims are “[a]n action upon a statute for a penalty” and therefore subject to NRS 11.190(4)(b)’s two-year statute of limitations, we disagree. For statute-of-limitations purposes, in determining whether an action is based upon a statute for a penalty or based upon a liability created by statute, a penalty has been described as a ‘ ‘punishment for an offense against the public . . . not incident to the redress of a private wrong.”
 
 [21]
 
 In other words, the term “penalty” generally is construed to mean something other than damages or pecuniary loss.
 
 [22]
 
 Here, the Torrealbas are suing for losses resulting from alleged notary misconduct, as authorized by statute. As such, their action is properly characterized as one upon a liability created by statute.
 

 The Torrealbas claim to have learned of the alleged misconduct on January 7, 2003, and they filed their complaint on January 6, 2006. Because, according to the Torrealbas’ account of when they discovered the alleged misconduct, they brought their claim within NRS 11.190(3)(a)’s three-year limit, the district court improperly granted summary judgment on their negligence per se claim on the ground that it was time-barred. Accordingly, we reverse the district court’s summary judgment on the Torrealbas’ negligence per se claim and remand this matter to the district court.
 
 [23]
 

 The Torrealbas’ fraud claim
 

 The Torrealbas also brought a claim for fraud against respondents, but their complaint did not specify any statutory authority for that claim. On appeal, the Torrealbas assert that their fraud claim was brought under NRS 240.150. NRS 240.150 makes no provision for a fraud claim, and we therefore conclude that a claim for fraud brought under this statute is improper. We have held previously that “ ‘it is the nature of the grievance rather than the form of the pleadings that determines the character of the action.’ ”
 
 [24]
 
 Because the nature of the Torrealbas’ claim is one for
 
 *105
 
 fraud, we conclude that the three-year statute of limitations applicable to common-law fraud actions under NRS 11.190(3)(d) applies here. Therefore, the district court erred by applying NRS 11.190(4)(b)’s two-year statute of limitations.
 

 An action for fraud accrues when the aggrieved party discovers the facts constituting the fraud.
 
 [25]
 
 In deciding whether the Torrealbas’ fraud-based claim was timely, the district court found that the Torrealbas had actual notice of the Diamond Key Homes power of attorney on the date Leonard signed that document and constructive notice of all three powers of attorney as of their recordation dates, which were all more than three years before the Torrealbas filed suit.
 
 [26]
 
 According to the Torrealbas, however, they discovered the facts constituting the alleged fraud on January 7, 2003, and their January 6, 2006, complaint was therefore timely. As we discuss below, the district court’s summary judgment on both actual and constructive notice grounds was in error.
 

 Actual notice
 

 We now consider whether the Torrealbas had actual notice of the Diamond Key Homes power of attorney. The Torrealbas acknowledge that Leonard signed his name and Shelly’s name, with her authority, on a document that was later attached to the Diamond Key Homes power of attorney. However, they maintain that the document was a separate signature sheet sent by J.M.K., that it did not include any acknowledgment, and that they were never informed of its intended use. Respondents, on the other hand, assert that Leonard signed the Diamond Key Homes power of attorney with full knowledge of the nature of the instrument.
 

 We conclude that a genuine issue of material fact exists with regard to the nature of the document Leonard signed, what he knew about the document, and whether his signature charges him with actual notice. Therefore summary judgment was inappropriate on the issue of actual notice.
 

 Constructive notice
 

 We next consider whether the Torrealbas received constructive notice of the powers of attorney when they were recorded, more than three years before the Torrealbas commenced their action. In
 
 *106
 
 doing so, we are presented with an issue of first impression: whether the recordation of an improperly acknowledged instrument can provide constructive notice. The Torrealbas argue that recordation does not impart constructive notice when the document recorded was improperly acknowledged. Respondents point to NRS 111.315 and NRS 111.320 specifically for the contention that the act of recording certain instruments imparts notice of the instruments to third parties, subsequent purchasers, and subsequent mortgagees.
 

 We conclude that a recorded but improperly acknowledged instrument may provide constructive notice only if honoring the instrument would not improperly benefit the notary or any party to the instrument and would not create harm.
 

 NRS 111.450(1) directs that powers of attorney be acknowledged and recorded in the same manner as other instruments that convey or affect real property.
 
 [27]
 
 Under NRS 111.320, filing with the Secretary of State or county recorder an acknowledged and recorded written instrument that conveys or is designed to convey or affect real property operates as notice of the contents of the instrument to all persons.
 
 [28]
 
 For the recordation to serve as notice to third parties, NRS 111.315 mandates that the instruments be recorded in the county in which the property is situated. The plain language of NRS 111.320 and NRS 111.315 encompasses the powers of attorney at issue here. Each of the powers of attorney authorizes J.M.K. to sign for the Torrealbas when reconveying deeds of trust for real property. The powers of attorney thereby contain the power to convey real property within the meaning of NRS 111.450, under which they must be acknowledged and recorded. Filing the powers of attorney with the Secretary of State or county recorder operates as notice to all persons of the contents thereof under NRS 111.320.
 

 
 *107
 
 NRS 111.320 requires, however, not only that such powers of attorney be recorded to provide notice, but also that they be acknowledged in the manner provided in NRS Chapter 111. NRS 111.240 instructs that acknowledgment of a power of attorney containing the authority to convey real property must conform to the requirements of the Uniform Law on Notarial Acts codified in NRS 240.161 to 240.169.
 
 [29]
 
 We conclude that although NRS 111.320 requires a power of attorney to be acknowledged to provide constructive notice, a bare allegation of a defect in a power of attorney’s acknowledgment is insufficient to prevent a recorded power of attorney from imparting constructive notice. While some jurisdictions require strict compliance with notarial requirements,
 
 [30]
 
 we determine that such a rule prevents courts from considering the individual circumstances in each case. In rejecting a rule requiring strict compliance, we consider and adopt the test enunciated by the Supreme Court of Appeals of West Virginia in
 
 In re
 
 Williams.
 
 [31]
 
 The
 
 Williams
 
 test allows courts to consider the individual factual circumstances surrounding a defective acknowledgment, thereby permitting courts to waive certain technical notarial violations while protecting against actual harm that may flow from honoring an improperly acknowledged document.
 

 In
 
 Williams,
 
 the Supreme Court of Appeals of West Virginia considered a certified question from the United States Bankruptcy Court for the Northern District of West Virginia regarding the priority of parties in a bankruptcy action when the instrument used to secure a priority interest was improperly acknowledged.
 
 [32]
 
 At issue was a deed of trust, notarized in West Virginia, granting the mortgage company a security interest in residential property. Because the notary was authorized to acknowledge signatures only in Maryland, however, he subsequently altered the acknowledgment to appear as if the debtors signed the deed in Maryland. The deed was then recorded in West Virginia. After the debtors filed bankruptcy, the bankruptcy trustee filed an action seeking to have the mortgage company declared an unsecured creditor on the ground that the improperly acknowledged deed of trust failed to secure the company’s priority interest.
 
 [33]
 
 The bankruptcy court certified the fol
 
 *108
 
 lowing question to the state court: “Does the trustee in bankruptcy, given the status of a bona fide purchaser without notice by federal bankruptcy law, prevail over the holder of a deed of trust recorded but improperly acknowledged?”
 
 [34]
 

 The
 
 Williams
 
 court concluded that the appropriate test for determining whether an improperly notarized instrument should be declared void is to inquire “ ‘whether an improper benefit was obtained by the notary or any party to the instrument, as well as whether any harm flowed from the transaction.’ ’ ’
 
 [35]
 
 If either question receives an affirmative response, the acknowledgment is invalid and the recorded instrument therefore does not provide constructive notice.
 
 [36]
 
 The court explained that it was retreating from its prior application of a strict per se rule for compliance with notary requirements because the newly adopted test focused on shielding the parties from “potential wrongdoing or fraud where notary misconduct results in an improperly acknowledged” instrument rather than voiding instruments based on imperfect acknowledgments regardless of the nature of the defect.
 
 [37]
 

 We adopt the
 
 Williams
 
 test because it strikes an appropriate balance between respecting the role of substantive notary requirements in protecting parties to a transaction from wrongdoing or fraud and recognizing that certain technical acknowledgement violations may not warrant voiding an instrument. Therefore, an improperly acknowledged but recorded instrument is invalid and thus does not provide constructive notice for commencing the limitations period if the notary or other party to the instrument would obtain an improper benefit or if harm would flow from the transaction if the court honored the instrument despite the improper acknowledgment.
 

 Here, the district court concluded that the Torrealbas had constructive notice of all three powers of attorney at least three years before they filed their complaint in this action. With regard to the Diamond Key Homes loan power of attorney, it is not clear whether it was signed, acknowledged, or recorded.
 
 [38]
 
 We conclude that a genuine factual dispute exists as to these issues, and we remand to the district court for further fact-finding.
 

 
 *109
 
 According to the test we adopt in this case, the Torrealbas had constructive notice of the other two recorded powers of attorney only if honoring the improperly acknowledged power of attorney would not confer an improper benefit to the notaries or other parties involved and would not cause harm to the Torrealbas. The Torrealbas allege that they never appeared before the notaries to sign the powers of attorney for the Taylor Ranch or Saxton loans.
 
 [39]
 
 J.M.K. does not refute that the Torrealbas failed to appear before the notaries, and therefore, no genuine issue of material fact exists with respect to the propriety of the acknowledgments. Since the Torrealbas did not appear before the notaries, the powers of attorney were not acknowledged according to the requirements of NRS 240.1655(2)(a). We therefore reverse the district court’s summary judgment and remand to the district court to consider whether honoring the improperly acknowledged powers of attorney would confer an improper benefit or cause harm.
 

 CONCLUSION
 

 We reverse the district court’s summary judgment on the Torrealbas’ claim of negligence per se because the Torrealbas brought the claim for damages under NRS 240.150(l)-(2), and such a claim is based upon a liability created by statute and is subject to a three-year statute of limitations under NRS 11.190(3)(a). In addition, we reverse the district court’s summary judgment on the Torrealbas’ fraud claim because common-law fraud is subject to a three-year statute of limitations under NRS 11.190(3)(d). Because factual issues remain disputed with regard to whether the Torrealbas filed their complaint within the three-year limitation period, we remand this matter to the district court.
 

 Next, we reverse the district court’s summary judgment on the issue of whether the Torrealbas had actual notice of the Diamond Key Homes power of attorney. We conclude that a genuine factual dispute exists as to the nature of the document Leonard signed on his and Shelly’s behalf and whether his signature charges the Tor
 
 *110
 
 realbas with actual notice, and we remand this matter to the district court.
 

 Finally, we adopt the test set forth in
 
 Williams
 
 for determining whether a recorded but improperly acknowledged instrument imparts constructive notice, and we instruct that an acknowledgment should be declared void for constructive notice purposes if the notary or any party to the instrument would obtain an improper benefit or if any harm would flow from the transaction if the court honored the improper acknowledgment. If either an improper benefit would result or harm would flow from the flawed acknowledgement, the recorded instrument that relied upon it does not impart constructive notice. Thus, we reverse the district court’s summary judgment and remand this matter to the district court for further proceedings.
 

 Parraguirre and Douglas, JJ., concur.
 

 [1]
 

 584 S.E.2d 922 (W. Va. 2003).
 

 [2]
 

 Anvui, LLC v. G.L. Dragon, LLC,
 
 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (alterations in original) (internal quotations omitted) (quoting
 
 Wood v. Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005)).
 

 [3]
 

 Sustainable Growth
 
 v.
 
 Jumpers, LLC,
 
 122 Nev. 53, 61, 128 P.3d 452, 458 (2006).
 

 [4]
 

 Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.,
 
 123 Nev. 598, 602-03, 172 P.3d 131, 134 (2007) (internal footnote omitted) (quoting
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 325 (1986)).
 

 [5]
 

 Id.
 
 at 603, 172 P.3d at 134.
 

 [6]
 

 Leven v. Frey,
 
 123 Nev. 399, 402, 168 P.3d 712, 714 (2007).
 

 [7]
 

 Seput
 
 v.
 
 Lacayo,
 
 122 Nev. 499, 502, 134 P.3d 733, 735 (2006).
 

 [8]
 

 Southern Nev. Homebuilders v. Clark County,
 
 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (quoting
 
 Washington
 
 v.
 
 State,
 
 117 Nev. 735, 739, 30 P.3d 1134, 1136 (2001)).
 

 [9]
 

 NRS 240.150 states,
 

 1. For misconduct or neglect in a case in which a notary public appointed pursuant to the authority of this State may act, either by the law of this State or of another state, territory or country, or by the law of nations, or by commercial usage, he is liable on his official bond to the parties injured thereby, for all the damages sustained.
 

 2. The employer of a notary public is liable for any damages proximately caused by the misconduct of the notary public, if:
 

 (a) The notary public was acting within the scope of his employment at the time he engaged in the misconduct; and
 

 (b) The employer of the notary public consented to the misconduct of the notary public.
 

 3. The Secretary of State may refuse to appoint or may suspend or revoke the appointment of a notary public who fails to provide to the Secretary of State, within a reasonable time, information that the Secretary of State requests from him in connection with a complaint which alleges a violation of this chapter.
 

 4. Except as otherwise provided in this chapter, for any willful violation or neglect of duty or other violation of this chapter, or upon proof that the notary public has been convicted of a crime involving moral turpitude:
 

 
 *102
 
 (a) A notary public or other person who violates a provision of this chapter may be fined not more than $2,000 for each violation;
 

 (b) The appointment of the notary public may be suspended for a period determined by the Secretary of State, but not exceeding the time remaining on his appointment;
 

 (c) The appointment of the notary public may be revoked; or
 

 (d) The notary public may be fined and his appointment may be:
 

 (1) Revoked; or
 

 (2) Suspended for a period determined by the Secretary of State.
 

 5. If the Secretary of State revokes or suspends the appointment of a notary public pursuant to this section, the Secretary of State shall:
 

 (a) Notify the notary public in writing of the revocation or suspension; and
 

 (b) Cause notice of the revocation or suspension to be published in a newspaper of general circulation in the county in which the notary public resides or works.
 

 6. Except as otherwise provided by law, the Secretary of State may impose the fine that is authorized pursuant to this section upon a notary public whose appointment has expired if the notary public committed the violation that justifies the fine before his appointment expired.
 

 [10]
 

 Gonzalez
 
 v.
 
 Pacific Fruit Express Co.,
 
 99 F. Supp. 1012, 1015 (D. Nev. 1951) (quoting
 
 Abram
 
 v.
 
 San Joaquin Cotton Oil Co.,
 
 46 F. Supp. 969, 976 (D. Cal. 1942)) (internal citations and quotations omitted).
 

 [11]
 

 62 P. 257, 257 (Cal. 1900).
 

 [12]
 

 Id.
 

 [13]
 

 Id.
 

 [14]
 

 Id.
 
 (quoting Cal. Civ. Proc. Code § 338(1) (Deering 1886)).
 

 [15]
 

 Norton v. Title Guaranty & Surety Co.,
 
 168 P. 16, 16-17 (Cal. 1917);
 
 see also Hellwig
 
 v.
 
 Title Guaranty & Surety Co.,
 
 179 P. 222, 222 (Cal. Ct. App. 1919) (holding “[tjhat an action upon the official bond of a notary public is an action upon a liability created by statute”). We note that since the court’s decision in
 
 Hellwig,
 
 the California Legislature amended the statute of limitations to provide a more specific limitations period for actions against a notary public on his official bond. Cal. Civ. Proc. Code § 338(6) (Deering 1949). Since the California Legislature has changed its subsections to a numbered format, the relevant statute is now codified as § 338(f).
 

 [16]
 

 NRS 240.020; NRS 240.060; NRS 240.065; NRS 240.075; NRS 240.130.
 

 [17]
 

 NRS 240.033(5); 240.036(2); 240.085(3)-(4); NRS 240.150(3)-(4).
 

 [18]
 

 NRS 240.030(1)(d).
 

 [19]
 

 NRS 240.033(1).
 

 [20]
 

 Sonoma County v. Hall, 62
 
 P. 257, 257 (Cal. 1900);
 
 see also City of Leavenworth
 
 v.
 
 Hathorn,
 
 58 P.2d 1160, 1161-62 (Kan. 1936) (holding that civil liability arising from a public official’s failure to perform the statutory duties of his office or post is a liability created by statute). We recognize that contrary authority holds that “[t]he liability of a notary public is founded on the common law and predates any statutory duty.”
 
 First Bank of Childersburg
 
 v.
 
 Florey,
 
 676 So. 2d 324, 331 (Ala. Civ. App. 1996) (citing
 
 Independence Leasing Corp. v. Aquino,
 
 445 N.Y.S.2d 893, 894 (City Ct. 1981)). We reject this position, however, in light of our analysis above.
 

 [21]
 

 Freeman
 
 v.
 
 Q Petroleum Corp.,
 
 417 N.W.2d 617, 618 (Minn. 1988).
 

 [22]
 

 See id.
 
 (citing
 
 Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,
 
 567 F.2d 984, 991 (Temp. Emer. Ct. App. 1977)).
 

 [23]
 

 Massey v.
 
 Litton, 99 Nev. 723, 728, 669 P.2d 248, 252 (1983) (holding that the time when statutes of limitation begin to run presents a factual issue precluding summary judgment).
 

 [24]
 

 State Farm Mut. Auto Ins. v. Wharton,
 
 88 Nev. 183, 186, 495 P.2d 359, 361 (1972) (quoting
 
 Automobile Ins. Co. v. Union Oil Co.,
 
 193 P.2d 48, 50 (Cal. Ct. App. 1948)).
 

 [25]
 

 Siragusa
 
 v.
 
 Brown,
 
 114 Nev. 1384, 1391, 971 P.2d 801, 806 (1998).
 

 [26]
 

 Despite the district court’s erroneous application of NRS 11.190(4)(b)’s two-year statute of limitations, it found that the Torrealbas waited more than three years after they had constructive notice of the alleged fraud to file their cause of action. Thus, even applying NRS 11.190(3)(a)’s three-year statute of limitations, the district court would have found that the Torrealbas’ fraud claim was time-barred.
 

 [27]
 

 NRS 111.450(1) provides:
 

 Every power of attorney, or other instrument in writing, containing the power to convey any real property as agent or attorney for the owner thereof, or to execute, as agent or attorney for another, any conveyance whereby any real property is conveyed, or may be affected, shall be acknowledged, or proved and certified, and recorded as other conveyances whereby real property is conveyed or affected are required to be acknowledged, or proved and certified, and recorded.
 

 [28]
 

 NRS 111.320 provides:
 

 Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this chapter or in NRS 105.010 to 105.080, inclusive, must from the time of filing the same with the Secretary of State or recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice.
 

 [29]
 

 The Uniform Law on Notorial Acts requires the notary, in taking an acknowledgement, to, among other things, determine that the person making the acknowledgement is the person signing the document. NRS 240.1655(2).
 

 [30]
 

 See Szczepka
 
 v.
 
 Weaver,
 
 942 P.2d 247, 249 (Okla. Civ. App. 1997);
 
 Succession of Wilson,
 
 213 So. 2d 776, 780 (La. Ct. App. 1968);
 
 Gulf Production Co. v. Continental Oil Co.,
 
 61 S.W.2d 185, 186-87 (Tex. Civ. App. 1933).
 

 [31]
 

 584 S.E.2d 922, 925 (W. Va. 2003).
 

 [32]
 

 Id.
 

 [33]
 

 Id.
 
 at 924-25.
 

 [34]
 

 Id.
 
 at 925. The bankruptcy court noted that twelve cases were pending involving improperly acknowledged deeds of trust.
 
 Id.
 

 [35]
 

 Id.
 
 at 928 (quoting
 
 Galloway v. Cinello,
 
 423 S.E.2d 875, 876 (W. Va. 1992)).
 

 [36]
 

 Id.
 

 [37]
 

 Id.
 

 [38]
 

 Since we cannot determine where the power of attorney was recorded, if at all, we decline to address whether Arizona or Nevada law governs on the constructive notice issue.
 

 [39]
 

 We note that an additional basis exists for the Torrealbas’ fraud claim. The Torrealbas maintain, and J.M.K. does not dispute, that they did not sign the powers of attorney for the Taylor Ranch or Saxton loans, and the Torrealbas maintain that they did not know the nature of the document they signed for the Diamond Key Homes loan. NRS 111.450(1) requires that powers of attorney authorizing sales of real property or agreements affecting real property be “acknowledged, or proved and certified, and recorded.” NRS 240.002 defines an acknowledgment as “a declaration by a person that he has executed an instrument for the purposes stated therein.” Under NRS 111.450(1), an unacknowledged power of attorney is void. The Torrealbas, however, argue only that the recordation of the powers of attorney does not impart notice; they do not argue that the powers of attorney are void because they do not contain the Torrealbas’ signatures or they were not acknowledged. Accordingly, we do not reach the issue.