**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD DUTCHER; GWEN
DUTCHER; RICHARD FERGUSON;
MICHELLE FERGUSON;
CATHERINE RICHARDS AHLERS,
on their own behalf and on behalf of a
class of similarly situated persons,

     Plaintiffs-Appellants,

v.

STUART T. MATHESON;
MATHESON, MORTENSEN, OLSEN
& JEPPSON, P.C.; RECONTRUST
COMPANY, N.A.; BAC HOME
LOANS SERVICING, LP; BANK OF
AMERICA, N.A.,

     Defendants-Appellees.

------------------------------

STATE OF UTAH; OFFICE OF
COMPTROLLER OF THE
CURRENCY,

     Amici Curiae.

No. 12-4150

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:11-CV-00666-TS)**

---

Marcus R. Mumford of Mumford Rawson LLC, Salt Lake City, Utah, for Plaintiff-Appellants.

Amy Miller of McGuireWoods, LLP, Washington, D.C., (Brian Emory Pumphrey of McGuireWoods LLP, Richmond, Virginia, and Craig Robert Mariger of Jones Waldo Holbrook & McDonough, PC, Salt Lake City, Utah, with her on the briefs), for Defendants-Appellees.

Thom D. Roberts, (Mark L. Shurtleff with him on the brief), Salt Lake City, Utah, for Amicus Curiae, State of Utah.

Amy S. Friend, Chief Counsel; Daniel P. Stipano, Deputy Chief Counsel; Horace G. Sneed and Douglas B. Jordan, Attorneys, Office of the Comptroller of the Currency, Washington, D.C., filed an Amicus Curiae brief for the Office of the Comptroller of the Currency.

---

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **BACHARACH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

Although this case presents significant questions regarding the interaction of federal banking and state foreclosure laws, our focus is upon a more fundamental question: whether the district court even had jurisdiction to consider the issues raised. Plaintiffs[1] filed a class-action lawsuit in state court, alleging that the defendants[2]—including ReconTrust, a Texas-based national bank—had

---

[1] The named plaintiffs are Richard and Gwen Dutcher, Richard and Michelle Ferguson, and Catherine Richard Ahlers.

[2] The defendants are Stuart T. Matheson; Matheson, Mortensen, Olsen & Jepsen, P.C.; BAC Home Loans Servicing, LP; ReconTrust Company, N.A.; and Bank of America, N.A.

2

conducted non-judicial foreclosure sales that did not comply with Utah law. After removal, the district court dismissed the complaint for failure to state a claim, concluding that whether federal law "incorporates Utah or Texas law, Recon[Trust] has not operated beyond the law by acting as a foreclosure trustee in Utah." Dist. Ct. Op. at 16. Plaintiffs now appeal.

On the limited record presented, we conclude that the district court erred in determining it had jurisdiction to hear this case. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate the district court's order of dismissal and its rulings on plaintiffs' motion for reconsideration and motion to amend. We remand for proceedings consistent with this opinion.

## I

In November 2007, Richard and Gwen Dutcher borrowed money from and executed a securing deed of trust in favor of Countrywide Bank. In February 2011, Countrywide assigned the beneficial interest in the trust deed to BAC Home Loans Servicing, LP, which in turn appointed ReconTrust as the successor trustee. ReconTrust filed a notice of non-judicial foreclosure with the Utah County Recorder. On June 14, 2011, Stuart T. Matheson, a Utah-based attorney, conducted a non-judicial foreclosure sale on behalf of ReconTrust.

*Procedural Background*

Shortly after that sale, the Dutchers, along with the other named plaintiffs, filed a class-action lawsuit in Utah state court alleging that Matheson and his law

3

firm, ReconTrust, and Bank of America had violated Utah law as it applies to non-judicial foreclosures. Under Utah law, only certain trustees may conduct a non-judicial foreclosure: 1) any active member of the state bar "who maintains a place within the state where the trustor or other interested parties may meet with the trustee," Utah Code Ann. § 57-1-21(1)(a)(i); and 2) title insurance companies that "actually do[] business" and maintain "bona fide office[s] in the state," Utah Code Ann. § 57-1-21(1)(a)(iv). See Utah Code Ann. § 57-1-21(3). Thus, plaintiffs argued, ReconTrust, a Texas-based bank, had no authority under Utah law to conduct non-judicial foreclosures. And Matheson and his law firm, the plaintiffs added, enabled this illegal conduct by holding the foreclosure sales on behalf of ReconTrust. The complaint alleged violations of Utah Code Ann. § 57-1-23.5, violations of Utah Code Ann. § 57-1-21, conversion, wrongful lien, wrongful foreclosure, and intentional infliction of emotional distress.

The defendants took two approaches in response. First, they sought to remove the case to federal court. They argued that the district court had jurisdiction under either the Class Action Fairness Act, or diversity jurisdiction. Second, the defendants filed a motion to dismiss. They argued that federal banking laws permitted ReconTrust to exercise the non-judicial power of sale thereby preempting application of the cited provision of Utah state law to the

4

foreclosures at issue.[3]

The district court held that it had jurisdiction under both 28 U.S.C. § 1331 and § 1332. It then dismissed the complaint for failure to state a claim. But shortly thereafter, another district court in Utah concluded in a similar case that federal law did not preempt Utah state law. See Bell v. Countrywide Bank, N.A., 860 F. Supp. 2d 1290, 1297-1309 (D. Utah 2012). This led the plaintiffs in this case to file a motion for reconsideration. They also asked for leave to amend their complaint. The proposed amended complaint no longer named Matheson and his law firm as defendants. It also dropped a number of the causes of action, including conversion, wrongful lien, and intentional infliction of emotional distress.

In July 2012, the district court issued an order denying all pending motions. Regarding the motion for reconsideration, the district court said: 1) that plaintiffs had waived the arguments they now wanted the court to consider because they failed to raise them in their initial brief; and 2) that "clear error" does not result

---

[3] Federal district courts in Utah have reached conflicting decisions as to whether federal law preempts this Utah state law. Compare Bell v. Countrywide Bank, N.A., 860 F. Supp. 2d 1290 (D. Utah 2012) (holding Utah law not preempted) with Garrett v. ReconTrust Co., No. 2:11CV00763DS, 2011 WL 7657381 (D. Utah Dec. 21, 2011) (federal law preempts Utah state law). One of these cases is being considered by another panel of our court. See Garrett, No. 12-4060. The Utah Supreme Court also recently held that federal law does not preempt this state law. See Fed. Nat'l Mortg. Ass'n v. Sundquist, ___ P.3d ___, No. 20110575, 2013 WL 3804040 (Utah July 23, 2013).

5

simply because another district court reached a different outcome. As the district court continued to believe that the plaintiffs had presented no viable causes of action, it also denied the motion to amend. Finally, the district court denied the State of Utah's motion to intervene as untimely.

The plaintiffs now appeal both the district court's initial decision dismissing their complaint and the subsequent decisions denying their motions. The State of Utah has filed an *amicus curiae* brief on behalf of the plaintiffs-appellants. We have also asked for and received an *amicus* brief from the Office of Comptroller of Currency ("OCC"), which administers the federal statute at issue in this case, 12 U.S.C. § 92a.

## II

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." Rural Water Dist. No. 2 v. City of Glenpool, 698 F.3d 1270, 1274 (10th Cir. 2012) (quotation omitted). The federal removal statute, 28 U.S.C. § 1441, permits a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The defendants removed the case from state court, and the district court concluded that federal jurisdiction could be established under both: 1) 28 U.S.C. § 1331, which gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States"; and 2) 28 U.S.C. § 1332, the diversity jurisdiction statute.

Although the plaintiffs did not challenge the district court's jurisdictional rulings on appeal, we asked the parties to submit supplemental briefing because "[t]his court has an independent obligation to ensure it has subject matter jurisdiction at every stage of the litigation." Fancher v. Barrientos, ___ F.3d ___, No. 12-2114, 2013 WL 3481983 at *6 n.2 (10th Cir. July 12, 2013).

We review de novo whether the district court had jurisdiction to act. United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999). "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." Id. As the parties removing this case to federal court, the defendants bear the burden of establishing jurisdiction by a preponderance of the evidence. Id.

*a. Complete Preemption*

A claim may be brought in federal court if the claim is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When determining whether a claim arises under federal law, "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). "A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Id. (quotation and alteration omitted). The plaintiffs' complaint

7

did not assert any cause of action premised upon a violation of a federal statute or the Constitution.[4] Typically, then, we would not have jurisdiction under § 1331.

But the doctrine of complete preemption provides an exception to the well-pleaded complaint rule. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id. That said, "[c]omplete preemption is . . . quite rare." Johnson v. MFA Petroleum Co., 701 F.3d 243, 248 (8th Cir. 2012).

In our circuit, "a claim of complete preemption demands a two-part analysis: first, we ask whether the federal question at issue preempts the state law relied on by the plaintiff; and second, whether Congress intended to allow

_____

[4] The defendants also argue that 28 U.S.C. § 1337 may provide a basis of jurisdiction. Under § 1337, "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." See Aplee. Supp. Br. at 15 n.5. But this statute provides no additional grant of jurisdiction beyond that provided in 28 U.S.C. § 1331. "[B]ecause the phrase 'arising under' has the same meaning in both statutes, § 1337 is superfluous." 13D Charles Alan Wright, et al., Federal Practice & Procedure § 3574 (3d ed., April 2013 update) (footnotes omitted). Cf. Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8 n.7 (1983) ("[W]e have not distinguished between the 'arising under' standards of § 1337 and § 1331."). "Only to the extent Section 1337 contains no amount-in-controversy requirement did it create (for commerce cases) a special exception to the strictures of general federal-question jurisdiction," which until 1980 had an amount-in-controversy requirement of $10,000. Gorski v. Local Union 134, Int'l Bhd. of Elec. Workers, 636 F. Supp. 1174, 1183 n.14 (N.D. Ill. 1986); see Lewis v. Alexander, 685 F.3d 325, 346 n.19 (3d Cir. 2012).

removal in such a case, as manifested by the provision of a federal cause of action . . . ." Devon Energy Prod. Co. v. Mosaic Potash Carslbad, Inc., 693 F.3d 1195, 1205 (10th Cir. 2012) (quotations and alterations omitted). But we usually address the second prong of this analysis first. Id. at 1206. The existence of a potential federal cause of action is critical; complete preemption is not the same as preemption. See Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1158 (10th Cir. 2004). That is, a state cause of action may not be viable because it is preempted by a federal law—but only if federal law provides its own cause of action does the case raise a federal question that can be heard in federal court.

While the district court held that federal law preempted state law, it never actually determined whether the plaintiffs have a private right of action under federal law. It appears that the district court assumed plaintiffs would have a private right of action for violation of federal law. But by doing so, the court impermissibly exercised hypothetical jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

The defendants argue that 12 U.S.C. § 92a preempts state law. Section 92a(a) states that:

> The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee,

9

> executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

In addition, 12 U.S.C. § 92a(k)(1) permits the OCC to take steps to revoke this permit if a "national banking association is unlawfully or unsoundly exercising, or has unlawfully or unsoundly exercised . . . the powers granted by this section."

In order to determine whether complete preemption is applicable here, we must first address whether federal law provides a private right of action to sue for violations of 12 U.S.C. § 92a. The statute does not on its face include this right, so if the right exists, it must be either implied, or derived through a cause of action provided in another statute. "Congressional intent is determinative" in deciding whether there are private rights of action to enforce federal law. Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004).

We are not the first circuit to consider this question. But of the three circuits that have, only one has concluded there is a private right of action to sue for violations of 12 U.S.C. § 92a. See B.C. Recreational Indus. v. First Nat'l Bank of Boston, 639 F.2d 828, 833 n.10 (1st Cir. 1981); but see In re Corestates Trust Fee Litig., 39 F.3d 61, 66-69 (3rd. Cir. 1994); Blaney v. Florida Nat'l Bank at Orlando, 357 F.2d 27, 30-31 (5th Cir. 1966). In B.C. Recreational, the First Circuit suggested that the plaintiffs could sue a national bank for acting as a fiduciary without a permit from the Comptroller, in violation of 12 U.S.C. §

10

92a(a).  It did not, however, conclude that 12 U.S.C. § 92a itself provided a private right of action.  Instead, it said an aggrieved party could file a lawsuit under 12 U.S.C. § 93, which makes the directors of banks liable for violations of the National Bank Act.  Id. at 833 n.10; see also Chesbrough v. Woodward, 244 U.S. 72 (1917) (permitting lawsuit for violation of National Bank Act under predecessor to § 93).

But in our view, the First Circuit made a crucial mistake in its analysis.  It erred in assuming that 12 U.S.C. § 92a was part of the National Bank Act.  It is not.  "While designated by the editors of the U.S. Code as 12 U.S.C. § 92a, the enacting legislation and accompanying legislative history did not amend, repeal or even mention the National Bank Act."  In re Corestates, 39 F.3d at 67.  Indeed, 12 U.S.C. § 92a is not covered by the text of 12 U.S.C. § 93(a).  Section 93 prohibits violations of "any provisions of title 62 of the Revised Statutes."  12 U.S.C. § 93.  But Title 62 of the Revised Statutes does not include the trust laws codified at 12 U.S.C. § 92a.[5]  See 12 U.S.C.S. § 21, References in Text.  Therefore, it does not appear that private parties can sue for violations of 12 U.S.C. § 92a under 12 U.S.C. § 93.

---

[5]  That 12 U.S.C. § 93(a) does not make bank directors liable for violations of 12 U.S.C. § 92a is further evidenced by 12 U.S.C. § 93(b).  Section 93(b)(1) imposes a civil monetary penalty on banks that violate any "provision of title 62 of the Revised Statutes or any of the provisions of section 92a of this title, or any regulation pursuant thereto . . . ."  This explicit reference to § 92a in § 93(b) suggests § 92a was deliberately omitted from the coverage of § 93(a).

11

Of course, an implied private right of action could exist under 12 U.S.C. § 92a itself.  However, no court has ever held 12 U.S.C. §92a contains an implied private right of action.  And the defendants have not asked us to so hold.  See Aplee. Supp. Br. at 15 (citing only B.C. Industries).  We therefore conclude that—even assuming that federal law preempts Utah law—the absence of a federal cause of action precludes us from relying on complete preemption as a jurisdictional basis for the district court to act.[6]

### b. Fraudulent Joinder/Diversity Jurisdiction

The district court held in the alternative that diversity jurisdiction also provided a basis for its jurisdiction.  In order to invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000."  Symes v. Harris,

---

[6] The defendants also argue that a federal question is presented because the "plaintiff's right to relief necessarily depends on resolution of a substantial question of law."  See Aplee. Br. at 15 n.5 (quoting Gilmore v. Weatherford, 694 F.3d 1160, 1170 (10th Cir. 2012)).  But this form of federal question jurisdiction—the so-called "substantial question" doctrine—covers an "exceedingly narrow [and] special and small category of cases."  Gilmore, 694 F.3d at 1171 (quotation omitted).  We decline to invoke it here.  The defendants presented mostly conclusory statements—in a single sentence in a footnote in their brief—that this case would satisfy the requirements for "substantial question" jurisdiction.  Moreover, they did not raise this issue in their notice of removal, leaving the plaintiffs without any opportunity to respond to this argument.  Cf. United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 n.2 (10th Cir. 1996).  ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction.").

12

472 F.3d 754, 758 (10th Cir. 2006). Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant. Here, the plaintiffs and some of the defendants—Matheson and his law firm—share a state of residency: Utah.

But the defendants argued, and the district court agreed, that the Utah-based defendants were "fraudulently joined," and should be ignored for the purposes of assessing complete diversity. See Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967). "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Cuevas v. BAC Home Loan Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998).

The district court relied on the second prong of the fraudulent joinder test—the inability of plaintiffs to establish a cause of action against either Matheson or his law firm in state court—to conclude fraudulent joinder had been established here. The district court held that under Utah law "it is well established that an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." App'x at 145 (quotation omitted). Because

13

plaintiffs made no effort to show "independent misbehavior" by Matheson or the law firm, any claim against those parties would necessarily fail, the court said. Id. Therefore, the court ruled that Matheson and his law firm need not be considered by the court when determining whether the requirements for diversity jurisdiction have been satisfied. Id. at 145-46. The defendants have likewise argued, citing Oxendine v. Overturf, 973 P.2d 417 (Utah 1999), that "as mere counsel and agent of ReconTrust, the Law Firm Defendants are immune from suits by non-clients for actions taken in representing their clients 'absent fraud, collusion or privity of contract.'" Aplee. Supp. Br. at 4.

We disagree with this interpretation of Utah law. The Utah Supreme Court has not created a blanket rule of immunity for lawyers acting as agents for their clients in the absence of fraud, collusion, or privity of contract. Instead, the court has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services.

In Oxendine, the mother of a decedent sued the decedent's personal representatives and personal representatives' attorney because she had not received the benefits to which she was entitled under Utah's wrongful death statute. 973 P.2d at 419-20. The mother argued "that as a statutory wrongful death heir she automatically acquired the status of third party beneficiary of the attorney-client agreement because the sole purpose of that agreement was to provide a benefit to the statutory heirs." Id. at 421. While the Utah Supreme

14

Court did say that "[h]istorically, an attorney could not be held liable to a non-client absent fraud, collusion or privity of contract," it made this statement when referring to the *duties* owed to non-clients when rendering legal services. Id. This is evidenced by the very next line in the opinion: "The modern trend is to abandon or relax the privity requirement recognizing that under certain circumstances a lawyer may have a duty to exercise reasonable care toward a non-client." Id. The plaintiffs are not asserting that Matheson and his law firm breached a duty of care that they, as lawyers, owed to the plaintiffs. The plaintiffs are asserting that Matheson and law firm committed independent torts. As a result, Oxendine is not relevant to the circumstances presented here.

A hypothetical demonstrates the problem with the defendants' argument that lawyers retain such broad immunity under Utah law. The district court stated that "there must be some showing of independent misbehavior on Matheson or [the law firm]'s part, apart from their execution of their principal's wishes." App'x at 145. But consider the hypothetical situation presented if a client hired a lawyer to commit a murder. Certainly, the lawyer would not be immune from liability simply because he was merely "excuti[ng] [the] principal's wishes" in his capacity as a lawyer. See Restatement (Third) of Law Governing Lawyers § 56 cmt. b (2000) ("If activities of a nonlawyer in the same circumstances would render the nonlawyer civilly liable or afford the nonlawyer a defense to liability, the same activities by a lawyer in the same circumstances generally render the

15

lawyer liable or afford the lawyer a defense."). Instead, like all agents, the lawyer would be liable for torts he committed while engaged in work for the benefit of a principal. See Restatement (Third) of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."); see also id. cmt. b, illus. 5 (agent liable for conversion that benefitted principal even though agent "did not derive a direct personal benefit from the converted funds").[7]

Because Oxendine does not support the defendants' broad proposition regarding the immunity of counsel when acting as agent for their clients, we cannot hold that Matheson and his law firm were fraudulently joined. However, that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e. fraudulent joinder. We are left then with the presence of non-diverse parties and thus we conclude that diversity jurisdiction has not been established.

---

[7] For this same reason, we reject the defendants' argument that Matheson and his law firm are not real parties in interest.

16

*c. Class Action Fairness Act*

But the defendants raised yet another basis for federal jurisdiction that the district court did not address: the Class Action Fairness Act. See 28 U.S.C. § 1332(d). "The Class Action Fairness Act . . . confer[s] federal jurisdiction over class actions involving at least 100 members and over $5 million in controversy when minimal diversity (between any defendant and any plaintiff member) is met." Prime Care of Northeast Kan., LLC v. Humana Ins. Co., 447 F.3d 1284, 1285 (10th Cir. 2006). But there are both permissive and mandatory exceptions to this rule. See 28 U.S.C. § 1332(d)(3), (4).

While the parties complied with our instruction to address Class Action Fairness Act jurisdiction in supplemental briefing, we do not believe it appropriate to resolve this thorny question without further development in the district court. Applying the Act and its exceptions involves shifting burdens of proof. See, e.g., Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1245-48 (10th Cir. 2012) ("Once a defendant meets this burden [of proving amount in controversy by a preponderance of the evidence], remand is appropriate only if the plaintiff can establish that it is legally impossible to recover more than $5,000,000."). Whether the requirements of the Class Action Fairness Act have been met is a question that is best left to the district court to decide in the first instance on remand.

## III

As we cannot affirm the district court's jurisdictional ruling on the record before us, we VACATE the district court's dismissal of this action and the denial of the plaintiffs' motions for reconsideration and to amend. We REMAND with instructions for the district court to determine whether it has jurisdiction to act and, relatedly, to rule in the first instance whether the Class Action Fairness Act provides jurisdiction. We DENY the plaintiffs' motion to supplement the record. We DENY as moot plaintiffs' motion to strike and defendants' motion for leave to file supplemental briefs.