FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 3, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANDY KERR, Colorado State
Representative; NORMA V. ANDERSON;
JANE M. BARNES, member Jefferson
County Board of Education; ELAINE
GANTZ BERMAN, member State Board
of Education; ALEXANDER E.
BRACKEN; WILLIAM K. BREGAR,
member Pueblo District 70 Board of
Education; BOB BRIGGS, Westminster
City Councilman; BRUCE W.
BRODERIUS, member Weld County
District 6 Board of Education; TRUDY B.
BROWN; JOHN C. BUECHNER, Ph.D.,
Lafayette City Councilman; STEPHEN A.
BURKHOLDER; RICHARD L. BYYNY,
M.D.; LOIS COURT, Colorado State
Representative; THERESA L. CRATER;
ROBIN CROSSAN, member Steamboat
Springs RE-2 Board of Education;
RICHARD E. FERDINANDSEN;
STEPHANIE GARCIA, member Pueblo
City Board of Education; KRISTI
HARGROVE; DICKEY LEE
HULLINGHORST, Colorado State
Representative; NANCY JACKSON,
Arapahoe County Commissioner;
WILLIAM G. KAUFMAN; CLAIRE
LEVY, Colorado State Representative;
MARGARET (MOLLY) MARKERT,
Aurora City Councilwoman; MEGAN J.
MASTEN; MICHAEL MERRIFIELD;
MARCELLA (MARCIE) L. MORRISON;
JOHN P. MORSE, Colorado State Senator;
PAT NOONAN; BEN PEARLMAN,
Boulder County Commissioner;
WALLACE PULLIAM; PAUL

No. 12-1445

WEISSMANN; JOSEPH W. WHITE,

     Plaintiffs - Appellees,

v.

JOHN HICKENLOOPER, Governor of Colorado, in his official capacity,

     Defendant - Appellant.

------------------------------

D'ARCY W. STRAUB; INDEPENDENCE INSTITUTE; CATO INSTITUTE; SEN. KEVIN LUNDBERG; REP. JERRY SONNENBERG; REP. JUSTIN EVERETT; REP. SPENCER SWALM; REP. JANAK JOSHI; REP. PERRY BUCK; SEN. TED HARVEY; SEN. KENT LAMBERT; SEN. MARK SCHEFFEL; SEN. KEVIN GRANTHAM; SEN VICKI MARBLE; SEN. RANDY BAUMGARDNER; REP. DAN NORDBERG; REP. FRANK MCNULTY; REP. JARED WRIGHT; REP. CHRIS HOLBERT; REP. KEVIN PRIOLA; SEN. SCOTT RENFROE; SEN. BILL CADMAN; COLORADO UNION OF TAXPAYERS FOUNDATION; NATIONAL FEDERATION OF INDEPENDENT BUSINESS; TABOR FOUNDATION; AMERICAN LEGISLATIVE EXCHANGE COUNCIL; NATIONAL TAXPAYERS UNION; AMERICANS FOR TAX REFORM; CITIZENS IN CHARGE; HOWARD JARVIS TAXPAYERS ASSOCIATION; CITIZENS FOR LIMITED TAXATION; GOLDWATER INSTITUTE; FREEDOM CENTER OF MISSOURI; CASCADE POLICY INSTITUTE; PELICAN INSTITUTE FOR PUBLIC POLICY; TAX FOUNDATION OF HAWAII;

2

WISCONSIN INSTITUTE FOR LAW & LIBERTY; WASHINGTON POLICY CENTER; OKLAHOMA COUNCIL FOR PUBLIC AFFAIRS; HOWARD JARVIS TAXPAYERS FOUNDATION; FREEDOM CENTER OF MISSOURI; FREEDOM FOUNDATION; GOLDWATER INSTITUTE; 1851 CENTER FOR CONSTITUTIONAL LAW; COLORADO CHAPTER OF THE AMERICAN ACADEMY OF PEDIATRICS; COLORADO NONPROFIT ASSOCIATION; COLORADO GENERAL ASSEMBLY; BELL POLICY CENTER; COLORADO FISCAL INSTITUTE; THE CENTER ON BUDGET AND POLICY PRIORITIES; COLORADO PARENT TEACHER ASSOCIATION; ERWIN CHEMERINSKY; HANS LINDE; WILLIAM MARSHALL; GENE NICHOL; WILLIAM WIECEK; COLORADO ASSOCIATION OF SCHOOL BOARDS; COLORADO ASSOCIATION OF SCHOOL EXECUTIVES;  CENTER ON BUDGET AND POLICY PRIORITIES; DAVID BALMER; JOHN COOKE; LARRY CROWDER; OWEN HILL; BETH MARTINEZ HUMENIK; TIM NEVILLE; ELLEN ROBERTS; RAY SCOTT; LAURA WOODS; JON BECKER; J. PAUL BROWN; KATHLEEN CONTI; DON CORAM; BRIAN DELGROSSO; TIM DORE; STEPHEN HUMPHREY; GORDON KLINGENSCHMITT; LOIS LANDFRAF; POLLY LAWRENCE; PAUL LUNDEEN; PATRICK NEVILLE; BOB RANKIN; KIM RANSOM; CATHERINE ROUPE; LORI SAINE; LANG SIAS; DAN THURLOW; YEULIN V. WILLETT; JAMES WILSON; JOANN WINDHOLZ; BOB GARDNER; MIKE KOPP; ANDY MCELHANY; STATE OF TEXAS; STATE OF IDAHO; STATE OF INDIANA; STATE OF MICHIGAN; CENTER FOR CONSTITUTIONAL JURISPRUDENCE,

Amici Curiae.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-CV-01350-RM-NYW)**
_____

Frederick R. Yarger (William Allen, Kathleen Spalding, Stephanie Lindquist Scoville, Matthew D. Grove, Megan Paris Rundlet, and Jonathan P. Fero, Office of the Attorney General for the State of Colorado, and Daniel D. Domenico, Kittredge LLC, with him on the briefs), Office of the Attorney General for the State of Colorado, Denver, Colorado, for Defendant-Appellant.

David E. Skaggs (Lino S. Lipinsky de Orlov, Dentons US LLP, Denver, Colorado,  John A. Herrick, Geoffrey Williamson, Carrie E. Johnson, Sarah M. Clark, Michael F. Feeley, Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, Michael L. Bender, Perkins Coie, LLP, Denver, Colorado; Herbert Lawrence Fenster, Covington & Burling LLP, Washington, D.C., with him on the briefs), for the Plaintiffs-Appellees.

Richard A. Westfall, Hale Westfall, LLP, Denver, Colorado, and Karen R. Harned and Luke A. Wake, NFIB Small Business Legal Center, Washington, D.C., filed an amicus curiae brief for National Federation of Independant Business; Tabor Foundation; American Legislative Exchange Council; National Taxpayers Union; Americans for Tax Reform; Citizens in Charge; Howard Jarvis Taxpayers Association; Citizens for Limited Taxation; Goldwater Institute; Freedom Center of Missouri; Cascade Policy Institute; Pelican Institute; Institute for Public Policy; Tax Foundation of Hawaii; Wisconsin Institute for Law and Liberty; Washington Policy Center on behalf of Defendant-Appellant.

Matthew J. Douglas, Holly E. Sterrett, Paul W. Rodney, and Nathaniel J. Hake, Arnold & Porter, LLP, Denver, Colorado, filed an amicus curiae brief for the Bell Policy Center and the Colorado Fiscal Institute on behalf of Plaintiffs-Appellees.

Ilya Shapiro, Cato Institute, Washington, D.C., filed an amicus curiae brief for Cato Institute on behalf of Defendant-Appellant.

Anthony J. Bruno, Milton A. Miller, and Jacquelynn K.M. Levien, Latham & Watkins, LLP, Los Angeles, California, and John C. Eastman, Center for Constitutional Jurisprudence, Orange, California, filed an amicus curiae brief for the Center for Constitutional Jurisprudence on behalf of Defendant-Appellant.

Andrew M. Low, Emily L. Droll, and John M. Bowlin, Davis Graham & Stubbs, LLP, Denver, Colorado, filed an amicus curiae brief for Colorado Association of School Executives and Colorado Association of School Boards on behalf of Plaintiffs-Appellees.

Harold A. Haddon and Laura G. Kastetter, Haddon Morgan and Foreman, P.C., Denver, Colorado, filed an amicus curiae brief for Colorado Chapter of the American Academy of Pediatrics and the Colorado Nonprofit Association on behalf of Plaintiffs-Appellees.

Stephen G. Masciocchi and Maureen Reidy Witt, Holland & Hart, LLP, Denver, Colorado, and Greenwood Village, Colorado, filed an amicus curiae brief for the Colorado General Assembly on behalf of Plaintiffs-Appellees.

Catherine C. Engberg, Shute Mihaly & Weinberger, LLP, San Francisco, California, filed an amicus curiae brief for the Colorado Parent Teacher Association on behalf of Plaintiffs-Appellees.

Jeffrey W. McCoy and Steven J. Lechner, Mountain States Legal Foundation, Lakewood, Colorado, filed an amicus curiae brief for Colorado Union of Taxpayers Foundation, Andy McElhany, Bill Cadman, Bob Gardner, Bob Rankin, Brian DelGrosso, Catherine Roupe, Chris Holbert, Dan Nordberg, Dan Thurlow, David Balmer, Don Coram, Ellen Roberts, Frank McNulty, Gordon Klingenschmitt, J. Paul Brown, James Wilson, Janak Joshi, Jerry Sonnenberg, John Cooke, Jon Becker, Justin Everett, Kathleen Conti, Kent Lambert, Kevin Grantham, Kevin Lundberg, Kevin Priola, Kim Ransom, Laura Woods, Lang Sias, Larry Crowder, Lois Landfraf, Lori Saine, Mark Scheffel, Mike Kopp, Owen Hill, Patrick Neville, Paul Lundeen, Perry Buck, Polly Lawrence, Randy Baumgardner, Ray Scott, Scott Renfroe, Spencer Swalm, Stephen Humphrey, Ted Harvey Tim Dore, Tim Neville, Vicki Marble, Yeulin V. Willett, Beth Martinez Humenik, and JoAnn Windholz, on behalf of Defendant-Appellant.

David Kopel, Independence Institute, Denver, Colorado, filed an amicus curiae brief for Independence Institute on behalf of Defendant-Appellant.

Ken Paxton, Attorney General of Texas, Charles E. Roy, First Assistant Attorney General, Scott A. Keller, Solicitor General, J. Campbell Barker, Deputy Solicitor General, Autumn Hamit Patterson, Assistant Attorney General, Office of the Attorney General for the State of Texas, Austin, Texas, and Lawrence G. Wasden, Attorney General of Idaho, Boise, Idaho, Gregory F. Zoeller, Attorney General of Indiana, Indianapolis, Indiana, and Bill Schuette, Attorney General of Michigan, Lansing, Michigan, filed an amicus curiae brief for the State of Idaho, State of Indiana, State of Michigan, and State of Texas on behalf of Defendant-Appellant.

Joseph R. Guerra and Kathleen Mueller, Sidley Austin, LLP, Washington, D.C., filed an amicus curiae brief for The Center on Budget and Policy Priorities on behalf of Plaintiffs-Appellees.

D'Arcy W. Straub, Littleton, Colorado, filed an amicus curiae brief for D'Arcy W. Straub on behalf of Defendant-Appellant.

Melissa Hart, University of Colorado School of Law, Boulder, Colorado, filed an amicus curiae brief for Erwin Chemerinsky, Gene Nichol, Hans Linde, William Marshall, and William Wiecek on behalf of Plaintiffs-Appellees.

———————————————————

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

———————————————————

**LUCERO**, Circuit Judge.

———————————————————

We are asked to take a second look at this case to consider the effect of the Supreme Court's intervening opinion in Arizona State Legislature v. Arizona Independent Redistricting Commission, 135 S. Ct. 2652 (2015) (hereinafter "Arizona"). See Hickenlooper v. Kerr, 135 S. Ct. 2927 (2015). In Arizona, the Supreme Court held that the Arizona Legislature as an institution had standing to challenge a voter-approved proposition. 135 S. Ct. at 2659. For standing purposes, the Arizona Court distinguished individual legislators, cf. Raines v. Byrd, 521 U.S. 811 (1997), from a legislature as a whole for claims challenging a legislature's power. We conclude that this rule of law materially alters the jurisprudence on legislator standing and compels us to reverse course from our previous opinion in Kerr v. Hickenlooper, 744 F.3d 1156 (10th Cir. 2014), vacated sub nom. 135 S. Ct. 2927 (2015), (hereinafter "Kerr I"), in which we affirmed the district court's ruling that individual legislators had standing. We now conclude that these individual

6

legislators lack standing because they assert only an institutional injury. We vacate the district court's order and remand for further proceedings.

**I**

Plaintiffs are current and former government officials in Colorado, parents of school-aged children, and educators. They filed suit in the district court advancing several challenges to Article X, § 20 of the Colorado Constitution, commonly referred to as the Taxpayer's Bill of Rights ("TABOR"). TABOR limits the revenue-raising power of state and local governments by requiring "voter approval in advance for . . . any new tax, tax rate increase, mill levy above that for the prior year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a new tax revenue gain." Colo. Const. art. X, § 20, cl. 4(a). The defendant, Governor John Hickenlooper, moved to dismiss the complaint. He argued that the plaintiffs lacked standing, that their claims presented nonjusticiable political questions, and that they failed to state a claim under the Equal Protection Clause.

The district court granted in part and denied in part the Governor's motion to dismiss. It dismissed plaintiffs' equal protection claim, but concluded that certain plaintiffs, who were current state legislators (the "legislator-plaintiffs"), had standing and that their claims were not barred by the political question doctrine. The court declined to consider whether any other plaintiffs possessed standing. Upon motion by Governor Hickenlooper, the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). We accepted jurisdiction and affirmed. Kerr I, 744 F.3d at 1183.

7

In Kerr I, we wrestled with the two essential Supreme Court cases on legislator standing, Coleman v. Miller, 307 U.S. 433 (1939), and Raines. In Coleman, the Court considered a challenge to Kansas' ratification of a proposed constitutional amendment after the lieutenant governor cast a tie-breaking vote in the state senate. 307 U.S. at 435. The Court held that twenty-one state senators, including the twenty who voted against ratification, possessed standing to sue because their "votes against ratification have been overridden and virtually held for naught although if they are right in their contentions their votes would have been sufficient to defeat ratification." Id. at 438. It concluded that "these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes." Id.

In Raines, the Court considered whether the Line Item Veto Act ("LIVA") caused cognizable injury by granting the President the authority to cancel certain spending and tax measures after signing them into law. 521 U.S. at 814. The Court held that six members of Congress who voted against LIVA lacked standing to challenge the law. Id. at 813-14. It distinguished Coleman on the ground that the legislators in that case had their votes "completely nullified." Id. at 823. In contrast, the Raines challengers merely alleged an "abstract dilution of institutional legislative power." Id. at 826.

We acknowledged in Kerr I that neither Raines nor Coleman "maps perfectly onto the alleged injury in this case," but concluded plaintiffs' "allegations fall closer to the theory of vote nullification espoused in Coleman than to the abstract dilution theory rejected in Raines." Kerr I, 744 F.3d at 1165. The legislator-plaintiffs allege that TABOR deprives them of their ability to perform the "legislative core functions of

8

taxation and appropriation" and "remov[es] the taxing power of the General Assembly." We determined that "[u]nder TABOR, a vote for a tax increase is completely ineffective because the end result of a successful legislative vote in favor of a tax increase is not a change in the law" and thus a legislator's vote is "advisory from the moment it is cast." Id. at 1165, 1166.

In making that determination, we considered several factors that distinguished this suit from Raines. In particular, we noted that legislator-plaintiffs lack a legislative remedy because "TABOR was not passed by, and cannot be repealed by, the Colorado General Assembly." Id. at 1166. But see Raines, 521 U.S. at 824 (noting that Congress could repeal LIVA by simple majority vote). Separation of powers concerns are not implicated because this case does not challenge an action taken by a coequal branch of the federal government. Kerr I, 744 F.3d at 1168. But see Raines, 521 U.S. at 819-20 ("[O]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."). And although the General Assembly was not a party, it submitted an amicus brief in support of standing. Kerr I, 744 F.3d at 1168. But see Raines, 521 U.S. at 829 (noting that both houses of Congress actively opposed the suit).

We further noted several features of the alleged injury that counseled against standing. As in Raines, the legislator-plaintiffs did not "claim that they were 'personally entitled' to cast an effective vote on revenue-raising measures in the sense that the authority at issue runs . . . with the Member's seat." Kerr I, 744 F.3d at 1170 (quoting

9

Raines, 521 U.S. at 821).  But we determined that "this factor alone cannot be sufficient to defeat standing."  Id.  We also acknowledged but rejected the Governor's argument that legislator-plaintiffs must identify a "specific legislative act," id. at 1168 (quotation omitted), in order to establish standing because "[o]ur standing jurisprudence does not demand that plaintiffs engage in an obviously futile gesture," id. at 1170.  And although we recognized that some cases have concluded individual legislators lack standing if their claimed injury impacted all members of a legislature equally, we noted that those cases rested in part on "the availability of internal legislative remedies, or separation-of-powers concerns, none of which are present in this case."  Id. at 1171.  Ultimately, we held that "the legislator-plaintiffs have sufficiently alleged an injury to the 'plain, direct and adequate interest in maintaining the effectiveness of their votes.'"  Id. at1171 (quoting Coleman, 407 U.S. at 438).

## II

After we decided Kerr I, the Supreme Court handed down Arizona, which parallels the present action in many respects.  In that suit, the Arizona Legislature argued that Proposition 106, which created an independent commission with sole authority over redistricting, violated the Elections Clause, U.S. Const. art. 1, § 4, cl. 1.  Arizona, 135 S. Ct. at 2658-59.  The Court held that the Legislature had standing, id. at 2665, but concluded that the regime did not violate the Elections Clause, id. at 2677.

The Arizona Court considered many of the same standing issues we confronted in Kerr I.  It first held that the Legislature did not need to point to a "specific

10

legislative act that would have taken effect but for" the challenged constitutional provision. Arizona, 135 S. Ct. at 2663 (quotation omitted). It concluded that the suit was not "premature," nor was the Legislature's injury hypothetical, because any legislative act would "directly and immediately conflict with the regime Arizona's Constitution establishes." Id. Under the Arizona Constitution, the Legislature does not have the power "'to adopt any measure that supersedes [an initiative], in whole or in part, . . . unless the superseding measure furthers the purposes' of the initiative." Id. at 2664 (quoting Ariz. Const. art. IV, pt. 1, § 1(14)). If the Legislature had adopted a redistricting plan, it would have violated the Arizona Constitution because any such adoption would constitute an attempt to supersede Proposition 106. Id. Further, once the independent commission certifies its redistricting plan to the Secretary of State, the Arizona Constitution requires the Secretary to implement that plan and no other. Id. (citing Ariz. Const. art. IV, pt. 2, § 1(17)). The Court held that "the Legislature need not violate the Arizona Constitution and show that the Secretary of State would similarly disregard the State's fundamental instrument of government" to establish standing. Id.

The Court then considered Raines and Coleman. It concluded the Legislature's asserted injury was similar to that alleged in Coleman. Id. at 2665. As in Coleman, the Court reasoned, the Legislature had standing because Proposition 106, in tandem with the Arizona Constitution's prohibition on undermining the purposes of an initiative, would "'completely nullif[y]' any vote by the Legislature,

11

now or 'in the future,' purporting to adopt a redistricting plan." Id. (quoting Raines, 521 U.S. at 823-24).

In distinguishing Raines, the Court first noted that the case before it did "not touch or concern the question whether Congress has standing to bring a suit against the President," which "would raise separation-of-powers concerns" and warrant an "'especially rigorous'" standing inquiry. Id. at 2665 n.12 (quoting Raines, 521 U.S. at 819). The Court then described that its primary basis for refusing to extend Raines was the plaintiffs' identity. The plaintiffs in Raines, who did not have standing, were "six individual Members of Congress" who failed to show an alleged injury that "zeroed in on any individual Member." Id. at 2664. Instead, the alleged injury was "'widely dispersed'" and "'necessarily impacted all Members of Congress and both Houses . . . equally.'" Id. (quoting Raines, 521 U.S. at 821, 829) (alterations omitted). In contrast, the Legislature in Arizona had standing because it was "an institutional plaintiff asserting an institutional injury, and it commenced th[e] action after authorizing votes in both of its chambers." Id. Finally, the Court noted that Raines had "'attached some importance to the fact that the Raines plaintiffs had not been authorized to represent their respective Houses of Congress.'" Id. (quoting Raines, 521 U.S. at 829) (alterations omitted). In contrast, the Arizona Legislature as an institution brought the suit challenging Proposition 106 after "authorizing votes in both of its chambers." Id.

**III**

12

Adhering to the holding in Arizona, we conclude that a threshold question in the legislator standing inquiry is whether the legislator-plaintiffs assert an institutional injury. This issue was discussed briefly in Raines. See 521 U.S. at 821 (describing "the diminution of legislative power" as "a type of institutional injury"). But as we noted in Kerr I, both Raines and Coleman were brought by groups of individual legislators. See Kerr I, 744 F.3d at 1170. Not so in Arizona. There, the Court was presented with "an institutional plaintiff asserting an institutional injury." Arizona, 135 S. Ct. at 2664. Viewing these cases together, individual legislators may not support standing by alleging only an institutional injury.

As defined in Arizona, institutional injuries are those that do not "zero[] in on any individual Member." Id. Instead, an institutional injury is "[w]idely dispersed" and "necessarily impact[s] all [m]embers of [a legislature] equally." Id. (quotation and alterations omitted). Thus, under Arizona, an institutional injury constitutes some injury to the power of the legislature as a whole rather than harm to an individual legislator. An individual legislator cannot "tenably claim a personal stake" in a suit based on such an institutional injury. Id. (quotation omitted).

This formulation differs in some respects from that expressed in Raines, which is internally inconsistent. The Raines Court described the injury alleged as a "type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both Houses of Congress equally." 521 U.S. at 821. It also stated—consistent with Arizona—that the plaintiffs had "alleged no injury to themselves as individuals" and "the institutional injury they allege is wholly abstract

13

and widely dispersed." 521 U.S. at 829. But the Raines Court also stated that Coleman was "[t]he one case in which we have upheld standing for legislators . . . claiming an institutional injury." Id. at 821.

Describing the injury in Coleman as "institutional" is difficult to square with the definition of an institutional injury provided in Arizona. As discussed supra, the Coleman Court held that a group of legislators, whose votes would have been sufficient to defeat a proposed amendment if their position were correct, had "a plain, direct and adequate interest in maintaining the effectiveness of their votes." 307 U.S. at 438. Such a claim does not rest on an injury that "necessarily impacted all [m]embers of [a legislature] equally." Arizona, 135 S. Ct. at 2664 (quotation and alterations omitted). To the contrary, Coleman considered which bloc of legislators had prevailed in a vote. Only the state senators whose votes were allegedly nullified suffered an injury; the twenty senators who voted in favor of the amendment at issue were not aggrieved at all. Thus, Coleman did not concern injury to the power of the legislature as a whole.

Moreover, prior to characterizing Coleman as involving an institutional injury, the Raines Court declared that the plaintiffs' "claim of standing is based on a loss of political power, not loss of any private right" and compared lower court decisions reaching different conclusions as to whether individual legislators have standing when they "assert injury to their institutional power as legislators." 521 U.S. at 820 n.4. The Court also stressed that Powell v. McCormack, 395 U.S. 486 (1969), which decided a case brought by an individual legislator who was denied a seat in the House

14

of Representatives, was inapposite.  Raines, 521 U.S. at 820-21.  Thus, it may be that the Raines Court used the term "institutional" in describing Coleman to distinguish injuries that a legislator suffers in an official capacity from those suffered in a personal capacity.

Whatever the meaning of this passage from Raines, however, we determine it clear that the Arizona Court used the term "institutional injury" to refer to a harm inflicted on a legislature itself, such that it necessarily impacts all members of that legislature in equal measure.  Arizona, 135 S. Ct. at 2664.  And although we acknowledge that Arizona did not expressly hold that only an institutional plaintiff possesses standing to assert an institutional injury, that much is implicit in the Court's opinion.[1]  If we misrepresent the present state of the pertinent jurisprudence, the Court itself can clarify the matter on further review.

We accordingly consider whether the legislator-plaintiffs have alleged an institutional injury.  They claim that TABOR deprives them of their ability to perform the "legislative core functions of taxation and appropriation."  Kerr I, 744 F.3d at 1163.  This injury shares several features with the one alleged in Arizona.  The injury goes "well beyond mere abstract dilution."  Kerr I, 744 F.3d at 1165 (quotation omitted), cf. Arizona, 135 S. Ct. at 2665.  Additionally, TABOR, like Proposition 106, cannot be repealed "pursuant to the normal legislative process."  Kerr I, 744 F.3d at 1166 (quotation omitted); cf. Arizona, 135 S. Ct. at 2664.  And

---

[1] We do not need to decide in this case whether a group of legislators large enough to prevail on a vote, see Coleman, 307 U.S. at 438, would possess standing based upon an institutional injury.

15

neither case presents separation of powers concerns. Kerr I, 744 F.3d at 1168; cf. Arizona, 135 S. Ct. at 2665 n.12. And most importantly, as in Arizona, the injury alleged by the legislator-plaintiffs is an institutional injury: it is based on the loss of legislative power that necessarily impacts all members of the General Assembly equally.

In determining whether a party may rely on an institutional injury to demonstrate standing, the Court has considered whether the plaintiffs represent their legislative body as an institution. See Arizona, 135 S. Ct. at 2664; Raines, 521 U.S. at 829. In Arizona, the Legislature "commenced th[e] action after authorizing votes in both of its chambers." 135 S. Ct. at 2664. In contrast, the Raines plaintiffs had "not been authorized to represent their respective Houses of Congress." 521 U.S. at 829. Similarly, when this suit was filed, only five of one hundred General Assembly members were parties. The Governor states that only three plaintiffs remain current members. And the plaintiffs have acknowledged that including their official positions in the complaint did not imply authority to represent the General Assembly. Thus, the legislator-plaintiffs pursue this action in their individual capacities, rather than as representatives for the General Assembly as a whole.

An amicus brief from the General Assembly in support of legislator standing does not alter our analysis. An amicus is not a party. See Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 844 (10th Cir. 1996). And the amicus brief does not indicate institutional endorsement of the merits of the legislator-plaintiffs' claims. The Senate Resolution approving the filing stated that

16

"[t]he involvement of the General Assembly as amicus curiae on the limited issue of standing . . . should carry no implication about the views of the General Assembly on the merits of such lawsuits." S. Joint Res. 16, 69th General Assembly, 1st Regular Sess., at 2 (Colo. 2013).

Moreover, the vote authorizing the amicus brief occurred two years after this suit was filed, and thus would not demonstrate that the "party invoking federal jurisdiction had the requisite stake in the outcome when the suit was filed." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). We further note that 44 current General Assembly members, including a majority of the Colorado State Senate, filed an amicus brief supporting the Governor after the Supreme Court vacated our prior opinion. But we do not need to consider the relative weight of these filings in our standing analysis. We observe only that an amicus brief in support of standing does not constitute authorization to bring the suit on behalf of the institution. And because the legislator-plaintiffs are not authorized to represent the General Assembly or either chamber, they do not qualify as institutional plaintiffs.

The Arizona Legislature was permitted to challenge a state constitutional provision stripping that body of certain power because it was "an institutional plaintiff." Arizona, 135 S. Ct. at 2664. But the legislator-plaintiffs are a group of individual members of the General Assembly with numbers too small to authorize this lawsuit or to enact a specific legislative act. The alleged injury "scarcely zeroe[s] in on any individual [m]ember." Id. "None of the plaintiffs, therefore, c[an] tenably claim a personal stake in the suit." Id. (quotation omitted).

17

In so holding, we do not suggest that an individual legislator can never bring suit. An individual legislator certainly retains the ability to bring a suit to redress a personal injury, as opposed to an institutional injury. For example, if a particular subset of legislators was barred from exercising their right to vote on bills, such an injury would likely be sufficient to establish a personal injury. See Raines, 521 U.S. at 824 n.7 (discussing similar hypotheticals). Under those circumstances, the legislator could claim a personal injury that zeroes in on the individual and is thus concrete and particularized. See Powell, 395 U.S. at 550 (action brought by individual claiming personal right to seat in the House of Representatives was justiciable). But the legislator-plaintiffs allege a different sort of injury altogether. They claim that they have been individually disempowered only concomitantly as a result of TABOR's diminution of the General Assembly's authority as an institution.

In determining that the legislator-plaintiffs had standing, Kerr I rested on a number of factors identified in Coleman and Raines, including the availability of a legislative remedy, Kerr I, 744 F.3d at 1166; the existence of separation of powers concerns, id. at 1168; and the extent to which TABOR disempowered the legislator-plaintiffs, id. at 1165-66. But Arizona materially altered the law on legislator standing such that the nature of the injury—whether it is personal or institutional—is a primary consideration in determining whether individual legislators may bring suit. Under Arizona, the legislator-plaintiffs assert only an institutional injury, and thus lack standing to bring this action.

**IV**

18

We previously emphasized the limited nature of this interlocutory appeal: "The district court determined that the plaintiffs who are current state legislators . . . have standing and thus declined to assess the standing of any other named plaintiffs . . . . We similarly limit our review to the standing of the legislator-plaintiffs." Kerr I, 744 F.3d at 1163. Governor Hickenlooper asks us to extend our review to determine whether any non-legislator plaintiffs have standing. We again decline to do so.

The Governor argues that we are obligated to reach all jurisdictional questions in this interlocutory appeal. But our court frequently remands jurisdictional issues for determination by the district court. See, e.g., Dutcher v. Matheson, 733 F.3d 980, 990 (10th Cir. 2013) (remanding "with instructions for the district court to determine whether it has jurisdiction"); Motive Parts Warehouse v. Facet Enters., 774 F.2d 380, 389 (10th Cir. 1985) ("[W]e deem it more appropriate to have the trial court specifically address the standing issue on remand."). Appellate courts have "discretion to remand issues, even jurisdictional ones, to the trial court when that court has not had the opportunity to consider the issue in the first instance." Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot., 550 F.3d 1121, 1134 (Fed. Cir. 2008) (collecting cases).

Declining to reach the issue of standing as to the remaining plaintiffs is particularly appropriate in the context of this interlocutory appeal. Although "[o]ur jurisdiction under 28 U.S.C. § 1292(b) is not confined to the question certified for appeal," we "are limited to consideration of the order from which [the] appeal is

19

taken." Jobin v. Boryla (In re M&L Business Mach Co.), 75 F.3d 586, 589 n.4 (10th Cir. 1996). Because the district court did not reach the Governor's arguments as to the non-legislator plaintiffs in its certified order, we lack information about the other plaintiffs. We remand for the district court to make the initial determination regarding non-legislator plaintiffs' standing.

For similar reasons, we decline to address the political question doctrine. See Kerr I, 744 F.3d at 1181. Because the district court erred in holding the legislator-plaintiffs possess standing, we vacate its certified order. On remand, if the district court concludes the remaining plaintiffs lack standing, there will be no reason to consider the political question doctrine. See Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005) (federal courts possess discretion "to choose among threshold grounds for denying audience to a case on the merits" (quotation omitted)). If, however, the district court holds that some other plaintiffs possess standing, the district court may then consider other justiciability hurdles. In the interest of judicial economy, we conclude that a remand for consideration of non-legislator standing is the best course.

## V

Because the legislator-plaintiffs rely on an institutional injury, we hold that they lack standing. We **VACATE** the district court's certified order and **REMAND** for a determination of whether the non-legislator plaintiffs possess standing.