WASHOE MEDICAL CENTER, INC., A NON-PROFIT NEVADA CORPORATION, APPELLANT, *v.* RELIANCE INSURANCE COMPANY, A PENNSYLVANIA CORPORATION, LICENSED TO DO BUSINESS IN THE STATE OF NEVADA, RESPONDENT.

No. 26941

April 30, 1996                    915 P.2d 288

---

[1]THE HONORABLE JUSTICE ROBERT E. ROSE did not participate in the decision of this appeal.

*Durney, Brennan* and *Shea,* Reno, for Appellant.

*Thorndal, Backus, Armstrong, and Balkenbush,* and *Charles L. Burcham,* Reno, for Respondent.

## OPINION

By the Court, YOUNG, J.:

Appellant Washoe Medical Center, Inc. ("WMC") provided treatment for a patient, Kathryn Boyer ("Boyer"), who was injured in an automobile accident by an uninsured driver. WMC filed notice of a hospital lien on Boyer's automobile insurance company, respondent Reliance Insurance Company ("Reliance"), for Boyer's hospital costs. Reliance paid the proceeds from Boyer's uninsured motorist ("UM") policy to Boyer, rather than WMC.

WMC filed suit against Reliance pursuant to NRS 108.650, seeking to recover the amount of the UM benefits paid to Boyer. Reliance filed a motion to dismiss, arguing that Nevada's hospital lien statute does not apply to a patient's UM benefits. WMC moved for partial summary judgment, arguing that the express language of NRS 108.650 allows a hospital lien to reach a patient's UM benefits.

On March 9, 1995, the district court granted Reliance's motion to dismiss and denied WMC's motion for partial summary judgment. WMC appeals, arguing that the district court erred in granting Reliance's motion to dismiss because the language of NRS 108.650 is very comprehensive, contains no exclusions for UM insurance and must be liberally construed to promote the legislative intent.

## DISCUSSION

In Edgar v. Wagner, 101 Nev. 226, 227, 699 P.2d 110, 112 (1985), this court stated that "[o]n review of a motion to dismiss, our task is to determine whether or not the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief." (Citations omitted.) The *Edgar* court further stated that "[t]he complaint cannot be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him to relief." *Id.* at 228, 699 P.2d at 112 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The question presented in this case is whether Nevada's hospital lien statute encompasses the UM benefits paid to an insured pursuant to her automobile insurance policy.

This court has recognized that "lien statutes are remedial in character and should be liberally construed . . . ." Las Vegas Plywood v. D & D Enterprises, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982). However, this court has also indicated that "[s]tatutes should be interpreted so as to effect the intent of the legislature in enacting them; the interpretation should be reasonable and avoid absurd results." Las Vegas Sun v. District Court, 104 Nev. 508, 511, 761 P.2d 849, 851 (1988) (citations omitted).

This court has stated that "[w]hen a statute is susceptible to but one natural or honest construction, that alone is the construction that can be given." Building & Constr. Trades v. Public Works, 108 Nev. 605, 610, 836 P.2d 633, 636 (1992) (citation omitted). The *Building & Construction Trades* court further stated that "[w]hen construing a specific portion of a statute, the statute should be read as a whole, and, where possible, the statute should be read to give meaning to all of its parts." *Id.* (citation omitted).

In applying these principles to the present case, we conclude that Nevada's hospital lien statute, when read as a whole, indicates that the legislature did not intend hospital liens to encompass an injured person's first-person UM coverage.

Nevada's hospital lien statute is codified at NRS 108.590 *et seq.* Two provisions are particularly applicable to our review of the present issue. First, NRS 108.590(1), the provision addressing the extent of the hospital's lien, provides in pertinent part:

> Whenever any person receives hospitalization on account of any injury, and he . . . *claims damages from the person responsible for causing the injury,* the hospital has a lien upon *any sum* awarded the injured person or his personal

representative by judgment or obtained by a settlement or compromise to the extent of the amount due the hospital for the reasonable value of the hospitalization rendered before the date of judgment, settlement or compromise.

(Emphasis added.)

The second applicable provision is NRS 108.610, which sets forth the notice requirements for perfecting a hospital lien. NRS 108.610(3) states in pertinent part:

Prior to the date of judgment, settlement or compromise, [the hospital must] serve a certified copy of the notice of lien by registered or certified mail upon *the insurance carrier, if known, which has insured against liability of the person, firm or corporation alleged to be responsible for causing the injury and alleged to be liable for damages on account thereof and from which damages are claimed.*

(Emphasis added.)

We conclude that Nevada's hospital lien statute does not encompass an individual's UM benefits for several reasons. First, the language of NRS 108.590(1) indicates that a hospital's lien rights are effectuated only when the person who receives hospitalization "claims damages from the person responsible for causing the damage." Consequently, we conclude that hospital liens do not attach unless an injured person claims damages from the third-party tortfeasor and the injured person is subsequently awarded damages pursuant to a judgment, settlement or compromise with the third-party tortfeasor or the third-party tortfeasor's insurance carrier. *See* NRS 108.590(1).

Second, we conclude that NRS 108.610(3) supports our determination that UM benefits are not encompassed by Nevada's hospital lien statute. Pursuant to NRS 108.610(3), a hospital must perfect its hospital lien by giving notice to "the insurance carrier . . . which has insured against liability of the person . . . responsible for causing the injury and alleged to be liable for damages on account thereof and from which damages are claimed." Nothing in NRS 108.610(3) requires that the injured person's UM carrier receive notice of the hospital lien. Although Reliance received notice of WMC's hospital lien in the present case, we conclude that the legislature's omission of UM insurance carriers from the notice requirement of NRS 108.610 indicates that the legislature did not intend Nevada's hospital lien statute to encompass an individual's UM insurance coverage.

Our ruling in this case is consistent with another court's interpretation of a similar statute. *See* Kratz v. Kratz, 905 P.2d 753 (Okla. 1995). In *Kratz,* the Supreme Court of Oklahoma

stated that "[t]he obvious purpose of the hospital lien statute is to encourage hospitals to care for accident victims who might otherwise be non-paying patients." *Id.* at 756. However, the *Kratz* court recognized that

> [a] lien that is not provided by the clear language of the statute cannot be created by judicial fiat, for the words of the statute are the measure of the right and the remedy. A court cannot create a lien out of a sense of fairness if the terms of the statute are found too narrow and have not been met.

*Id.*

We realize that other courts have enforced hospital liens against an injured party's UM benefits. *See* Dade County v. Pavon, 266 So. 2d 94 (Fla. Dist. Ct. App. 1972); Storey v. University of New Mexico Hosp., 730 P.2d 1187 (N.M. 1986). However, we conclude that these cases are not persuasive because the hospital lien statutes in those cases were much broader than Nevada's hospital lien statute.

In sum, we recognize that hospital lien statutes have the general purpose of lessening the burden imposed on hospitals by non-paying patients. *See generally* Carol A. Crocca, Annotation, *Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery from Tortfeasor Causing Patient's Injuries,* 16 A.L.R.5th 262, 285 (1993). However, this court's duty is to interpret the language of Nevada's hospital lien statute, not to expand upon that language. Accordingly, we conclude that broadening the scope of Nevada's hospital lien statute is a function of the legislature, not this court.

For the reasons discussed above, we affirm the district court's order granting Reliance's motion to dismiss and denying WMC's motion for partial summary judgment.

STEFFEN, C. J., and SHEARING, J., concur.

ROSE, J., with whom SPRINGER, J., agrees, dissenting:

NRS 108.590(1) gives a hospital the right to lien money due when a patient "claims damage from the person responsible for causing the injury . . . " Because the record does not reflect that the patient Boyer made a claim against the apparent negligent driver, the majority concludes that the statute does not invest the hospital with a lien against Boyer's uninsured motorist coverage.

The statutes in question were obviously written to cover the usual situation where a patient's expenses are paid for by the third party insurance coverage of the negligent driver. But when the negligent driver is uninsured and has no assets, the patient's first party uninsured motorist coverage is substituted for the usual responsibility of the negligent driver. Whether dealing with the

third party insurance coverage of a negligent driver or the first party uninsured motorist coverage of the patient, the policy behind the hospital lien statutes is to invest a hospital with the authority to collect for services provided from the people or insurance companies responsible for paying for such care and treatment. Permitting the hospital to recover that portion of the patient's insurance benefits designed to pay for damage caused by uninsured motorists does no violence to the statutory scheme. This construction would be the appropriate liberal construction to carry out the intent of these remedial statutes. *See* Las Vegas Plywood v. D & D Enterprises, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982).

Reliance was on notice that Washoe Medical Center was placing a claim against Boyer's uninsured motorist coverage. When Reliance ignored the hospital's lien and paid the uninsured motorist proceeds directly to Boyer, it did so at its own jeopardy. I believe a reasonable construction of the hospital lien statutes before recent amendment should permit a hospital to assert a lien against the uninsured motorist coverage of a patient, even though uninsured motorist coverage is not specifically mentioned in the statutes. Accordingly, I disagree with the majority and would reverse this summary judgment entered in Reliance's favor.