**134 Nev., Advance Opinion 9**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DAVID DEZZANI; AND ROCHELLE DEZZANI, Appellants, vs. KERN & ASSOCIATES, LTD.; AND GAYLE A. KERN, Respondents. | No. 69410 **FILED** MAR 0 1 2018 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |
| DAVID DEZZANI; AND ROCHELLE DEZZANI, Appellants, vs. KERN & ASSOCIATES, LTD.; AND GAYLE A. KERN, Respondents. | No. 69896 |

Consolidated pro se appeals from orders dismissing a complaint in a tort action and awarding attorney fees and costs. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Affirmed in Docket No. 69410; affirmed in part and reversed in part in Docket No. 69896.*

David Dezzani and Rochelle Dezzani, San Clemente, California, in Pro Se.

Kern & Associates, Ltd., and Gayle A. Kern and Veronica A. Carter, Reno; McDonald Carano LLP and Debbie A. Leonard, Reno, for Respondents.

Marquis Aurbach Coffing and Micah S. Echols and Adele V. Karoum, Las Vegas, for Amicus Curiae State Bar of Nevada.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

In these consolidated appeals, we consider whether an attorney can be held liable for a claim under NRS 116.31183 as an agent of a common-interest community homeowners' association. We also consider whether attorneys litigating pro se and/or on behalf of their law firms can recover attorney fees and costs.

We conclude that an attorney is not an "agent" under NRS 116.31183 for claims of retaliatory action where the attorney is providing legal services for a common-interest community homeowners' association. We further conclude that attorneys litigating pro se and/or on behalf of their law firms cannot recover fees because those fees were not actually incurred by the attorney or the law firm. However, we conclude that attorneys litigating pro se and/or on behalf of their law firms can recover taxable costs in the action. Accordingly, we affirm in part and reverse in part.

*FACTS AND PROCEDURAL HISTORY*

Appellants David and Rochelle Dezzani own a condominium in Incline Village, Nevada. Like all unit owners, the Dezzanis are members of the McCloud Condominium Homeowners' Association (HOA), which is governed by a board of directors and subject to the Revised Declaration of Limitations, Covenants, Conditions, and Restrictions of McCloud Condominium Homeowners' Association (CC&Rs). Respondents Gayle Kern, a Nevada attorney, and her law firm, Kern & Associates (collectively, Kern), represent the HOA and provide legal advice to its governing board.

In 2013, a dispute arose between the Dezzanis and the HOA regarding an extended deck on the Dezzanis' unit. The previous unit owner installed the deck extension with board approval in 2002. The board issued the Dezzanis a notice of violation (NOV) with drafting assistance from Kern informing the Dezzanis that the deck encroached into the common area and thus violated the CC&Rs. The NOV indicated that the Dezzanis had two choices: (1) submit an architectural application to the board to revert the deck back to its original size; or (2) execute a covenant for the deck extension, which would allow it to remain for the Dezzanis' ownership and one subsequent conveyance.

After the Dezzanis responded to the NOV, Kern sent the Dezzanis a letter stating that she represented the HOA and restating the board's position on the deck extension. Kern and the Dezzanis exchanged several letters wherein Kern communicated the board's position regarding the deck and the Dezzanis challenged the NOV and criticized Kern's legal advice, understanding of Nevada law, and competency. The board held a hearing and ultimately upheld the NOV. Throughout this time, Kern advised the HOA regarding the Dezzanis' and other members' deck extensions.

The Dezzanis filed a complaint against Kern and board member Karen Higgins.[1] The complaint alleged retaliation based on NRS 116.31183. This statute allows a unit owner to "bring a separate action" for compensatory damages, attorney fees, and costs. NRS 116.31183(2)(a), (b). Such an action is permissible when "[a]n executive board, a member of an

---

[1]Due to service of process issues, the claims against Higgins were dropped.

SUPREME COURT
OF
NEVADA

(O) 1947A

executive board, a community manager or an officer, employee or agent of an association" takes

> retaliatory action against a unit's owner because the unit's owner has:
>
> (a) Complained in good faith about any alleged violation of [NRS Chapter 116] or the governing documents of the association;
>
> (b) Recommended the selection or replacement of an attorney, community manager or vendor; or
>
> (c) Requested in good faith to review the books, records or other papers of the association.

NRS 116.31183(1). The Dezzanis alleged that Kern retaliated against them because they requested that the HOA retain a new attorney; however, the Dezzanis did not specify how Kern retaliated against them other than furnishing advice to the HOA and communicating with the Dezzanis on behalf of the HOA.

The district court granted Kern's NRCP 12(b)(5) motion to dismiss with prejudice after finding that NRS 116.31183 does not permit attorneys to be held personally liable for action taken on behalf of a client, and that "to permit such causes of action against Kern would result in a chilling effect on individuals' ability to hire and retain counsel."[2] The district court awarded fees and costs to Kern pursuant to NRS 18.010(2)(b) and NRCP 11, finding that the Dezzanis' claims were intended to harass

---

[2]We note that although the district court cited NRS 116.3118 in its order, the surrounding discussion makes it clear that the court was actually referring to NRS 116.31183.

Kern because Kern informed the Dezzanis that their claims were meritless. The Dezzanis appealed both orders.

The Dezzanis' appeals were consolidated and assigned to the Court of Appeals, where that court affirmed the order dismissing the complaint and reversed the attorney fees and costs award because the Dezzanis failed to submit their claim to mediation under NRS 38.310(1).[3] *See Dezzani v. Kern & Assocs.*, Docket Nos. 69410 & 69896 (Order Affirming in Part and Reversing in Part, Nev. Ct. App., Nov. 16, 2016). Kern filed a petition for review with this court, which we granted.

## DISCUSSION

NRS 116.31183 permits "a separate action" when an "agent" of a homeowners' association takes certain retaliatory action against a unit's owner. The issue here is whether the term "agent" in the statute includes an attorney who is providing legal services to and acting on behalf of a homeowners' association.

*The district court did not err in dismissing the Dezzanis' complaint*

We review an order granting an NRCP 12(b)(5) motion to dismiss de novo. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). Issues of statutory construction are reviewed de novo. *Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124

---

[3]NRS 38.310(1) requires civil actions that relate to "[t]he interpretation, application or enforcement of any covenants, conditions or restrictions [(CC&R's)]" to be submitted to mediation prior to a civil action being filed in court. NRS 38.310(1) is not implicated in this case because the question before this court involves an interpretation of NRS 116.31183, not an interpretation of the HOA's CC&Rs. *See Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 296, 183 P.3d 895, 900 (2008) (concluding that NRS 38.310 applies where interpreting the CC&Rs is necessary to resolve the merits of the case).

Nev. 138, 146, 179 P.3d 542, 548 (2008). "The leading rule of statutory construction is to ascertain the intent of the legislature in enacting the statute." *McKay v. Bd. of Supervisors of Carson City*, 102 Nev. 644, 650, 730 P.2d 438, 443 (1986). To determine legislative intent, we first consider and give effect to the statute's plain meaning because that is the best indicator of the Legislature's intent. *Pub. Emps.' Benefits Program*, 124 Nev. at 147, 179 P.3d at 548. "[I]t is the duty of this court, when possible, to interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of those statutes and to avoid unreasonable or absurd results, thereby giving effect to the Legislature's intent." *Torrealba v. Kesmetis*, 124 Nev. 95, 101, 178 P.3d 716, 721 (2008) (internal quotation marks omitted).

The word "agent" is not defined in NRS 116.31183 or otherwise in NRS Chapter 116. *See* NRS 116.31183; NRS 116.003-.095 (definitions). Kern points to NRS 116.31164, which governs foreclosure of liens, and argues that because NRS 116.31164 uses the words "agent" and "attorney" distinctly, it demonstrates that the Legislature purposefully distinguished an attorney from an agent under NRS Chapter 116. Therefore, Kern contends that the Legislature specifically omitted attorneys from NRS 116.31183, and the term "agent" does not include attorneys.

We agree. NRS 116.31164(4) states that a foreclosure sale can be "conducted by the association, its agent *or* attorney." (Emphasis added.) This distinction demonstrates that the Legislature used the term "attorney" when it intended to address situations applying to attorneys and the term "agent" when it intended to generically address the duties owed by agents. *See Coast Hotels & Casinos, Inc. v. Nev. State Labor Comm'n*, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) ("Generally, when the [L]egislature

has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded."); *Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) ("We read statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result."); *McGrath v. State Dep't of Pub. Safety*, 123 Nev. 120, 123, 159 P.3d 239, 241 (2007) (concluding that "we presume that the Legislature intended to use words in their usual and natural meaning"); *see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (concluding that courts must interpret statutes "as a symmetrical and coherent regulatory scheme" (internal quotation marks omitted)); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Accordingly, given the Legislature's distinction between "agent" and "attorney," we conclude that the Legislature did not intend for attorneys to be included in the term "agent" for the purposes of NRS 116.31183.

The dissent is dismissive of the fact that the Legislature distinguished between the terms "agent" and "attorney" in another statute within the same statutory scheme as NRS 116.31183. Notably, the Dezzanis did not raise the statutory interpretation arguments that the dissent puts forth, and therefore, we should not consider them *sua sponte*. *See, e.g., Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). Additionally, because the Dezzanis failed to respond to Kern's arguments regarding the Legislature's distinction between "agent" and "attorney," they have waived the issue. *Bates v. Chronister*, 100 Nev. 675,




682, 691 P.2d 865, 870 (1984) (treating the failure to respond to the opposing party's arguments as a confession of error).

Regardless, the dissent's statutory analysis ignores fundamental rules of statutory construction that begin with analyzing a statute's plain language and its context in the statutory framework, and instead, emphasizes rules of statutory construction involving grammar and punctuation use that are generally resorted to only when they can be employed consistently with the legislative intent. *See* 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 21.15 (7th ed. 2009) (stating that grammar and punctuation use are statutory interpretation aids, but "neither is controlling unless the result is in harmony with the *clearly* expressed intent of the Legislature," and acknowledging that "[c]ourts have indicated that punctuation will not be given much consideration in interpretation because it often represents the stylistic preferences of the printer or proofreader instead of the considered judgment of the drafter or legislator" (emphasis added)).

Additionally, the dissent suggests that we read the word "or" too strictly. But "[t]he word 'or' is typically used to connect phrases or clauses representing alternatives." *Coast Hotels & Casinos, Inc.*, 117 Nev. at 841, 34 P.3d at 550. Moreover, "courts presume that 'or' is used in a statute disjunctively unless there is *clear* legislative intent to the contrary." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 21.14 (7th ed. 2009) (emphasis added). The dissent concludes that the lack of a comma separating the words "agent" and "attorney" in NRS 116.31164(4) is sufficient to demonstrate that the Legislature intended the phrase "agent or attorney" to mean that "an attorney is merely a subset or an example of an agent, as opposed to not-an-

 

agent." Dissenting opinion *post.* at 5. However, there is no indication that the Legislature intended to use the word "or" in any manner other than disjunctively, and we will not give the absence of a comma decisive weight where doing so would render the word "attorney" in NRS 116.31164(4) redundant and meaningless. *See Bd. of Cty. Comm'rs of Clark Cty. v. CMC of Nev., Inc.*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983) (concluding that we avoid "[a] reading of legislation which would render any part thereof redundant or meaningless, where that part may be given a separate substantive interpretation"); *see also* 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 21.14 (7th ed. 2009) (noting that "when a list exists, the 'or' between two subsections makes it necessary to read 'or' as a disjunctive").

Under the dissent's reasoning, the Legislature's use of the word "agent" in NRS Chapter 116 should always include attorneys. But this interpretation is contrary to the plain language of NRS Chapter 116 and overlooks the Legislature's distinct use of the term "agent" when intending to address matters concerning agents and not attorneys. *See, e.g.*, NRS 116.3107(1) (requiring unit owners to allow "agents" to pass through their units in order for the association to uphold its duty to maintain the common elements); NRS 116.31073(3)(a) (allowing "[t]he association, the members of its executive board and its officers, employees, agents and community manager" to enter a unit to repair a security wall). Thus, such a broad interpretation of the word "agent" does not comport with the statutory framework as a whole. Accordingly, we conclude that the Legislature did not intend to include attorneys in the term "agent" for purposes of NRS 116.31183. Public policy does not support including attorneys as agents under NRS 116.31183.

Notwithstanding the statutory language and interpretation, the Dezzanis ask us to conclude as a matter of public policy that attorneys are included in the term "agent" in NRS 116.31183. Based on the unique characteristics of an attorney-client relationship that distinguish it from a general agent-principal relationship, we decline to do so.

*Black's Law Dictionary* defines "agent" as "[s]omeone who is authorized to act for or in place of another; a representative." *Agent, Black's Law Dictionary* (10th ed. 2014). Generally, "[a]n agency relationship results when one person possesses the contractual right to control another's manner of performing the duties for which he or she was hired." *Hamm*, 124 Nev. at 299, 183 P.3d at 902. Agency law typically creates liability for a principal for the conduct of his agent that is within the scope of the agent's authority. *Nev. Nat'l Bank v. Gold Star Meat Co.*, 89 Nev. 427, 429, 514 P.2d 651, 653 (1973). Conversely, "[a]n agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party." Restatement (Third) of Agency § 7.02 (2006). But this definition of "agent" describes a general agent-principal relationship, which, as discussed below, is distinguishable from an attorney-client relationship. And the legislative history of the statute, which was passed into law in 2003, *see* 2003 Nev. Stat., ch. 385, § 41, at 2218, and its recent amendments, offer no insight into the intended meaning of the word.[4]

---

[4]*See, e.g.*, Hearing on S.B. 182 Before the Senate Judiciary Comm., Exhibit D8, 75th Leg. (Nev., March 18, 2009) (discussing NRS 116.31183's inclusion of community managers and stating that "they are probably already covered under 'agents'" but providing no further definition); Senate Daily Journal, 75th Leg. 449 (Nev., April 16, 2009) (stating that the purpose of the amendments to NRS 116.31183 was to "provide certain additional

This court has recognized that the attorney-client relationship is an agent-principal relationship in the context of whether the client is responsible for the acts of the attorney. For example, in *Estate of Adams v. Fallini*, we considered whether the district court erred in granting an NRCP 60(b) motion to set aside the judgment based on fraud upon the court. 132 Nev., Adv. Op. 81, 386 P.3d 621, 625 (2016). In resolving the issue, we noted that the respondent's lawyer's "abandonment of his client and his professional obligations to his client . . . alone . . . might not warrant relief, as the lawyer is the client's agent and the acts and omissions of an agent ordinarily return to the principal who hired the faithless agent, not those who dealt with the agent in his representative capacity." *Id.* Similarly, in a case where the lawyer fraudulently entered into a settlement agreement on behalf of his clients without authority, we concluded that the clients were not bound to the agreement because the lawyer's fraud negated his authority as an agent. *NC-DSH, Inc. v. Garner*, 125 Nev. 647, 656-57, 218 P.3d 853, 860 (2009). Other courts that have concluded that the attorney-client relationship is an agent-principal relationship have similarly focused on whether the client could be liable for the attorney's actions under agency law. *See, e.g., Horwitz v. Holabird & Root*, 816 N.E.2d 272, 277 (Ill. 2004) ("In the attorney-client relationship, clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority."); *Koutsogiannis v. BB & T*, 616 S.E.2d 425, 428 (S.C. 2005) (concluding that an attorney is an agent of the client, and, therefore, the client can be liable

---

rights to units' owners by . . . increasing the scope and definition of prohibited retaliatory action," without discussing the intended meaning of the word "agent").

for the attorney's conduct that falls within the scope of representation); *see also* Grace M. Giesel, *Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer-Client Relationship*, 86 Neb. L. Rev. 346, 348 (2007).

However, whether the attorney, as opposed to the client, can be personally liable as an agent for actions the attorney took in representing his or her client is distinguishable from cases involving client liability for attorney actions. It does not follow that because an agency relationship has been recognized in the context of client liability for attorney actions that the same notion applies in the context of attorney liability to an adverse or third party from actions taken in representing a client. Rather, an attorney providing legal services to a client generally owes no duty to adverse or third parties. *Fox v. Pollack*, 226 Cal. Rptr. 532, 536 (Ct. App. 1986); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Whether an attorney is liable under an agency theory hinges on whether the attorney is acting solely as an agent for the client, i.e., as a debt collector, or whether the attorney is providing legal services to a client. *Cantey Hanger*, 467 S.W.3d at 481-83.

Moreover, we have previously noted that "the attorney-client relationship involves much more than mere agency, and is subject to established professional standards." *Molezzo Reporters v. Patt*, 94 Nev. 540, 542, 579 P.2d 1243, 1244 (1978). Additionally, we have recognized that courts treat the attorney-client relationship differently from other agent-principal relationships based on the unique characteristics of the attorney-client relationship and the different factual circumstances present in an attorney-client relationship. *See NC-DSH, Inc.*, 125 Nev. at 656, 218 P.3d at 860 (observing that courts "do not treat the attorney-client relationship

 

as they do other agent-principal relationships" in the context of settlement agreements (quoting Grace M. Giesel, *Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer-Client Relationship*, 86 Neb. L. Rev. 346, 348 (2007))); *see also Rucker v. Schmidt*, 794 N.W.2d 114, 120 (Minn. 2011) ("[A]lthough attorneys in the discharge of their professional duties are, in a restricted sense, agents of their clients, this agency is distinguishable from other agency relationships . . . ."). The attorney's role is to not only communicate on behalf of his client, but also to counsel, render candid advice, and advocate for his client. RPC 2.1; *Greenberg Traurig, LLP v. Frias Holding Co.*, 130 Nev. 627, 631-32, 331 P.3d 901, 904 (2014). Further, attorneys are limited by ethical obligations that are not typically present in other agent-principal relationships. *See* RPC 1.4(a)(5) (attorney assistance limited by Rules of Professional Conduct); *accord* RPC 1.1 (competence); RPC 1.6 (confidentiality).

Given an attorney's ethical obligations to be candid with a client and zealously represent his or her client, and the general presumption that an attorney providing legal services to a client is generally not subject to third-party liability for that representation, we agree with Kern and the amicus curiae State Bar of Nevada that the two relationships should not be treated the same in NRS 116.31183. Doing so, and imposing liability on an attorney for representing his or her HOA client, would impermissibly intrude on the attorney-client relationship and interfere with an HOA's ability to retain an attorney and the attorney's ability to ethically represent the HOA. Therefore, we conclude that the term "agent" in NRS 116.31183 does not include an attorney who is providing legal services to, and acting on behalf of, a common-interest community homeowners' association.

 

Although the Dezzanis argue that the attorney-client relationship is different when an attorney and an HOA are involved because the HOA members' fees are used to pay the HOA's attorneys, we disagree. Kern represented the HOA, not its individual members. Thus, similar to counsel for a corporation, Kern owed fiduciary duties only to the HOA, not to the individual members of the HOA. *See Skarbrevik v. Cohen, England & Whitfield*, 282 Cal. Rptr. 627, 635 (Ct. App. 1991) ("[C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.").

Considering NRS Chapter 116 as a whole and giving harmonious effect to both NRS 116.31183 and NRS 116.31164, we conclude that the Legislature did not intend to use the term "agent" to include attorneys. Additionally, given the unique characteristics of the attorney-client relationship that distinguish the attorney-client relationship from a general agent-principal relationship, we agree with Kern that the two relationships should not be treated the same in NRS 116.31183. Thus, because an attorney who is providing legal services and acting on behalf of a common-interest community homeowners' association is not an "agent" of the association for purposes of NRS 116.31183, there can be no cause of action against that attorney pursuant to NRS 116.31183 and the district court did not err when it dismissed the Dezzanis' action against Kern.

*The district court erred in awarding Kern attorney fees*

The Dezzanis also challenge the district court's award of attorney fees to Kern for the services she performed on behalf of herself and her firm. The Dezzanis assert that Kern cannot collect attorney fees because she was representing herself, whereas Kern argues that she is able

SUPREME COURT
OF
NEVADA

(O) 1947A

to collect attorney fees because she was representing her law firm. The district court awarded attorney fees under NRS 18.010(2)(b) and as sanctions under NRCP 11, because it found that the Dezzanis initiated their suit to harass Kern. The district court noted that David Dezzani "has been an attorney for several years and is aware of the obligation to proceed in good faith in all causes of action," and that Kern notified the Dezzanis pursuant to NRCP 11(b) and (c) that their claim was meritless, but they decided to pursue it regardless.

We review a district court's award of attorney fees pursuant to NRS 18.010(2)(b) for an abuse of discretion. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d 684, 687 (1995). We have consistently held that attorney litigants who proceed pro se may not be awarded attorney fees because when attorneys represent themselves or their law firms, no fees are actually incurred. *See Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 124 Nev. 1206, 1220-21, 197 P.3d 1051, 1060-61 (2008) (concluding that a law firm could not recover fees for itself when an attorney within the firm represented it); *Sellers v. Fourth Judicial Dist. Court*, 119 Nev. 256, 259, 71 P.3d 495, 497-98 (2003) (determining that a pro se attorney litigant is entitled to attorney fees only when he or she is genuinely obligated to pay an attorney for the services that the attorney performed). However, where pro se attorney litigants incur costs associated with the action, they can collect those costs. *See Sellers*, 119 Nev. at 258, 71 P.3d at 497.

The Dezzanis instituted suit against Kern and her law firm, and Kern's district court filings indicated that she proceeded pro se. Because Kern represented herself and her law firm, and thus did not actually incur any attorney fees, we conclude that the district court erred in

awarding attorney fees to Kern. However, because Kern actually incurred costs defending this action, we conclude that the district court did not err in awarding Kern costs.[5]

## CONCLUSION

Having concluded that the Legislature did not intend the word "agent" in NRS 116.31183 to encompass an attorney who is providing legal services to and acting on behalf of a common-interest community homeowners' association client, we conclude that the district court did not err in dismissing the Dezzanis' complaint for failure to state a claim upon which relief can be granted. We thus affirm the district court's judgment in Docket No. 69410. We further conclude that attorneys representing themselves or their law firms cannot recover attorney fees because those fees are not actually incurred. Therefore, we conclude that the district court abused its discretion in awarding Kern attorney fees, and we reverse that

---

[5]Regardless of whether Kern actually incurred costs associated with the action, appellate review of this issue has been waived. *See Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 493, 117 P.3d 219, 227 (2005) (deeming waived the issue of whether costs awarded to a party were reasonably incurred where the opposing party did not move the district court to retax and settle the costs). Kern served the Dezzanis with a copy of her memorandum of costs, but the Dezzanis did not move the district court to retax and settle those costs. Therefore, the Dezzanis waived appellate review of this issue.

portion of the district court's order, but affirm the portion of the district court's order awarding costs to Kern, in Docket No. 69896.

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., dissenting:

NRS 116.31183 gives a homeowner who is wrongfully retaliated against for demanding that the HOA fire its attorney the right to sue the HOA *or its agent* for compensatory damages. An attorney is, by definition, the "agent" of the client he or she represents. Since NRS 116.31183 applies to an HOA's agent—and makes no exception for attorney-agents—I cannot agree with the majority's decision to dismiss the homeowners' wrongful retaliation complaint against the HOA board's attorney *with prejudice.* This decision effectively exempts attorneys from NRS 116.31183, granting them an absolute immunity from suit that neither the statute's text nor the common law supports.

To recover compensatory damages for violation of NRS 116.31183, a homeowner must establish a compensable injury, i.e., that the retaliation was wrongful and caused harm. Here, the wrongfulness of the retaliation alleged substantially depends on the covenants, conditions and restrictions (CC&Rs) and whether they justified the measures the HOA's attorney pursued against the homeowners. As the court of appeals correctly held, NRS 38.310's mandatory mediation requirements therefore apply. Under NRS 38.310, this case should have been dismissed *without prejudice*, pending mediation. If mediation failed, the district court would then have to decide whether wrongful retaliation occurred. This is a merits-based determination, not a matter of absolute immunity.

I.

A.

The district court decided this case on an NRCP 12(b)(5) motion to dismiss. The complaint alleges that, as homeowners in a Nevada common-interest community, the Dezzanis complained to their HOA board about its attorney, Kern, demanding that she be fired, and that Kern

 

retaliated by causing the HOA to pursue the Dezzanis for bogus CC&R violations. Nevada has not adopted the federal "plausibility" standard for assessing a complaint's sufficiency, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), instead following the rule that a "complaint cannot be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts [that], if accepted by the trier of fact, would entitle him to relief." *Washoe Med. Ctr., Inc. v. Reliance Ins. Co.*, 112 Nev. 494, 496, 915 P.2d 288, 289 (1996) (citation omitted).

Judged by Nevada's motion-to-dismiss standards, the Dezzanis' complaint sufficiently states an NRS 116.31183-based claim. NRS 116.31183 gives a homeowner who complains about her HOA board or its attorney and is retaliated against for doing so the right to sue for compensatory damages:

> 1. An executive board, a member of an executive board, a community manager or an officer, employee or *agent of an association shall not take, or direct or encourage another person to take, any retaliatory action against a unit's owner because the unit's owner has:*
>
> (a) Complained in good faith about any alleged violation of any provision of this chapter or the governing documents of the association; [or]
>
> (b) *Recommended the selection or replacement of an attorney,* community manager or vendor . . . .
>
> . . . .
>
> 2. In addition to any other remedy provided by law, *upon a violation of this section, a unit's owner may bring a separate action to recover:*
>
> (a) *Compensatory damages*; and

(b) Attorney's fees and costs of bringing the separate action.

NRS 116.31183 (emphases added).

Etymologically and by definition, the word "attorney" means "agent." *Attorney, Oxford English Dictionary* (2d ed. 1989) (tracing *attorney* to the Old French *atourné*, past participle of *attourner*, "to attorn, in sense of 'one appointed or constituted'"; defining attorney as "[o]ne appointed or ordained to act for another; *an agent*") (emphasis added); *attorney, Black's Law Dictionary* (9th ed. 2009) (defining attorney as, "[s]trictly, one who is designated to transact business for another; *a legal agent*") (emphasis added); *attorney, American Heritage Dictionary of the English Language* (3d ed. 1996) (defining attorney as "[a] person legally appointed by another to act as his or her agent in the transaction of business"). Black-letter law and our cases agree. Restatement (Third) of the Law Governing Lawyers ch. 2, intro. note (Am. Law. Inst. 2000) ("A lawyer is an agent."); Restatement (Second) of Agency § 14 cmt. b (Am. Law Inst. 1958) (characterizing attorneys as "recognized agents"); *NC-DSH, Inc. v. Garner*, 125 Nev. 647, 656, 218 P.3d 853, 860 (2009) ("a client who hires a lawyer establishes an agency relationship").

By its plain terms, NRS 116.31183 imposes statutory liability on an "agent" of an HOA who "take[s] retaliatory action" against a homeowner for recommending the "replacement of an [HOA board's] attorney"—precisely what the Dezzanis allege Kern did here. "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). Since attorneys are agents and NRS 116.31183 applies to HOA agents without exception for attorneys, the Dezzanis'

 

complaint sufficiently stated a statute-based claim for relief against Kern and should not have been dismissed with prejudice under NRCP 12(b)(5).

## B.

In the teeth of the statute's plain meaning, the majority insists that "the Legislature did not intend for attorneys to be included in the term 'agent' for the purposes of NRS 116.31183." Majority opinion *ante* at 7. As support, the majority relies first on NRS 116.31164(4), then on public policy.

The statute the majority relies on for the proposition attorneys are not agents, NRS 116.31164(4), concerns HOA lien foreclosure sales. It provides that an HOA foreclosure sale "may be conducted by the association, *its agent or attorney*, or a title insurance company or escrow agent licensed to do business in this state." (Emphasis added.) To the majority, NRS 116.31164(4)'s use of the word "or" between "agent" and "attorney" signifies that, for purposes of all of NRS Chapter 116, the Legislature has redefined "agent" to exclude "attorneys." Majority opinion *ante* at 6-7 (accepting Kern's argument that "because NRS 116.31164 uses the words 'agent' and 'attorney' distinctly, it demonstrates that the Legislature purposefully distinguished an attorney from an agent under NRS Chapter 116"). Continuing, the majority credits Kern's position that the Legislature should be seen as having "specifically omitted attorneys from NRS 116.31183"— though it did no such thing—so that, for purposes of NRS Chapter 116, "the term 'agent' does not include attorneys." Majority opinion *ante* at 6.

Respectfully, this reads more into the word "or" than it can support. Doubtless, an "or" preceded by a comma can indicate a disjunctive, such that two words that are separated by an "or" have two alternative definitions. But an "or" is not always disjunctive, and "it is important not to read the word 'or' too strictly where to do so would render the language

 

of the statute dubious." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 21.14 (7th ed. 2009). As shown above, "attorney" is universally understood to mean "agent." To read the "or" in NRS 116.31164(4) as redefining "attorney" for purposes of NRS Chapter 116 to mean not-an-agent renders the language of the statute "dubious" indeed. *Id.* Also, NRS 116.31164(4) refers to an association or "its agent or attorney" and not "its agent, or attorney." The lack of a comma suggests that, in this context, an attorney is merely a subset or an example of an agent, as opposed to not-an-agent. *See Sutherland Statutes & Statutory Construction*, at § 21.15 ("A comma should always separate each member of a class."). The phrase that follows "agent or attorney" in NRS 116.31164(4)—"a title insurance company or escrow agent"—reinforces this reading, as a "title insurance company" can serve as an "escrow agent," and those terms, too, are joined by "or" in NRS 116.31164(4), with no comma separating them.

The true basis for the majority's decision to exempt attorneys from NRS 116.31183 seems policy-driven, not textual. It is the majority's view that

> . . . imposing liability on an attorney for representing his or her HOA client[ ] would impermissibly intrude on the attorney-client relationship and interfere with an HOA's ability to retain an attorney and the attorney's ability to ethically represent the HOA [so, we] conclude that the term "agent" in NRS 116.31183 does not include an attorney who is providing legal services to, and acting on behalf of, a[n HOA].

Majority opinion *ante* at 13; *see id.* at 12-13 (citing and quoting from *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 331 P.3d 901 (2014),

 

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015), and *Fox v. Pollack*, 226 Cal. Rptr. 532 (Ct. App. 1986)).

These cases express some of the same policy concerns the majority has with NRS 116.31183 but they arise in the common-law setting and do not justify judicially exempting attorneys from a statute that, by its plain terms, applies to them. Thus, the majority's cited cases stand for one of two unexceptionable common-law propositions—first, "that communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications[, including attorneys,] immune from civil liability," *Greenberg Traurig*, 130 Nev. at 630, 331 P.3d at 903 (quotation omitted); *see Cantey Hanger*, 467 S.W.3d at 481 ("as a general rule, attorneys are immune from civil liability to non-clients *for actions taken in connection with representing a client in litigation*") (quotation omitted; emphasis added); and second, that "an attorney's duty of care in giving legal advice to a client [normally does not extend] to persons with whom the client in acting upon the advice deals," *Fox*, 226 Cal. Rptr. at 536 (quotation omitted). Though both propositions are sound as a matter of common law, neither supports exempting attorneys from statutory obligations and liabilities like those imposed by NRS 116.31183.

In general, "a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances." Restatement (Third) of the Law Governing Lawyers § 56 (Am. Law Inst. 2000). Thus, a lawyer who commits wrongful acts in the name of representing a client outside the litigation setting does *not* enjoy absolute immunity from suit. *See Dutcher v. Matheson*, 733 F.3d 980, 988-89 (10th Cir. 2013) (reversing district court order deeming a lawyer immune from

liability in tort merely because the lawyer committed the tort alleged while representing a client; "like all agents, the lawyer would be liable for torts he committed while engaged in work for the benefit of a principal"); *accord Chalpin v. Snyder*, 207 P.3d 666, 677 (Ariz. Ct. App. 2008) (noting that "lawyers have no special privilege against civil suit" and that "[w]hen a lawyer advises or assists a client in acts that subject the client to civil liability to others, those others may seek to hold the lawyer liable along with or instead of the client") (quoting *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005), and Restatement (Third) of the Law Governing Lawyers § 56 cmt. c). While statements attorneys make representing clients in court are privileged, and a third party ordinarily may not sue a lawyer for malpractice committed against a client, these propositions do not immunize lawyers from liability in other settings.

> Lawyers are subject to the general law. If activities of a nonlawyer in the same circumstances would render the nonlawyer civilly liable or afford the nonlawyer a defense to liability, the same activities by a lawyer in the same circumstances generally render the lawyer liable or afford the lawyer a defense.

Restatement (Third) of the Law Governing Lawyers § 56 cmt. b.

Absent express exemption, a lawyer who violates a statute while representing a client faces the same sanctions anyone else would face. Consider the extreme hypothetical posed in *Dutcher*: A lawyer is hired by a client "to commit a murder. Certainly, the lawyer would not be immune from [prosecution] simply because he was executing the principal's wishes in his capacity as a lawyer." 733 F.3d at 989 (quotation and editing marks omitted). And so it is that lawyers and law firms representing clients have been held liable under the federal securities, RICO, and civil rights statutes,

 

as well as certain federal and state consumer protection statutes. *See* Restatement (Third) of the Law Governing Lawyers § 56 cmts. i & j.

The Legislature rationally could have exempted attorneys from NRS 116.31183, for the policy reasons the majority identifies. But it did not. Instead, it passed a statute prohibiting retaliation against homeowners who complain about, among other things, an HOA's attorney and imposing civil liability on HOAs and agents of HOAs who engage in prohibited conduct.

The legislative history behind NRS 116.31183 is sparse but what there is confirms that NRS 116.31183 and its companion statute, NRS 116.31184, apply to attorneys equally with any other HOA agent. Thus, in 2009, the Legislature amended NRS 116.31183 to add subparagraph (1)(b), prohibiting retaliation against a homeowner who seeks to have the HOA's attorney replaced, S.B. 182, 75th Leg. (Nev. 2009), and the remedial provisions codified in subparagraph (2), A.B. 350, 75th Leg. (Nev. 2009). Among the concerns expressed by S.B. 182's sponsor, Senator Mike Schneider, were the "immensely chilling effect" HOA attorney retaliation against homeowners can have—and an FBI report suggesting that "such conduct may also be another means to perpetuate [the] self-dealing between corrupt managers *and attorneys*" that befell Nevada homeowners in the years preceding the amendment. Hearing on S.B. 182 Before the Senate Judiciary Comm., Exhibit D 8-9, 75th Leg. (Nev., March 18, 2009) (emphasis added). And in 2013, the Legislature added NRS 116.31184, which makes it a misdemeanor to "threaten, harass or otherwise engage in a course of conduct against," inter alia, unit owners or their guests, so as to cause them "harm or serious emotional distress" or to create "a hostile environment for [such] person." 2013 Nev. Stat., ch. 437, § 1. Like NRS

116.31183, NRS 116.31184 applies to, among others, "an officer, employee or agent of an association," without exception for attorneys. The majority's interpretation of NRS 116.31183 would necessarily immunize HOA attorneys from NRS 116.31184 as well as NRS 116.31183, which is, I submit, unreasonable.

## II.

The majority also holds that NRS 38.310 does not apply "because the question before this court involves an interpretation of NRS 116.31183, not an interpretation of the HOA's CC&Rs." Majority opinion *ante* at 5, n.3. Again, I disagree. In my view, a homeowner does not have a claim for compensatory damages for violation of NRS 116.31183 unless the retaliation was wrongful and caused improper harm. It is in this context that the policy concerns that lead the majority to confer absolute immunity on Kern apply, for I interpret NRS 116.31183 to say that if all Kern did was fairly demand that the Dezzanis comply with the CC&Rs, wrongful retaliation did not occur. *Compare McKnight Family, LLP v. Adept Mgmt. Servs., Inc.*, 129 Nev. 610, 615, 310 P.3d 555, 558 (2013) (recognizing contractual nature of CC&Rs), *with* Restatement (Third) of the Law Governing Lawyers § 57 ("[A] lawyer who . . . assists a client to . . . break a contract . . . is not liable to a nonclient for interference with contract . . . if the lawyer acts to advance the client's objectives without using wrongful means."). Determining whether wrongful retaliation occurred requires interpreting portions of the CC&Rs that relate to the dispute between the Dezzanis and the HOA regarding the extended deck on the Dezzanis' unit, including but not limited to the Dezzanis' obligations by virtue of purchasing the unit, the HOA's enforcement rights, and CC&R-based dispute-resolution requirements. Since the Dezzanis' claims call for interpretation of the CC&Rs, by law they must proceed to mediation before

going to court. *See Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 301-02, 183 P.3d 895, 904 (2008) ("parties must submit such an action to mediation or arbitration pursuant to NRS 38.310 before seeking relief in the district court").

## III.

Assuming mediation failed and the Dezzanis returned to court, they may or may not have been able to make a case against Kern that could survive summary judgment. Whatever the Dezzanis' prospects for success on the merits, this case has significance beyond the parties because of the principles of statutory interpretation and attorney immunity involved. The Legislature sets policy and writes statutes that the courts in turn must enforce as written, unless the statutes are constitutionally infirm. As NRS 116.31183 applies to HOA agents, without exception for attorneys, and attorneys do not enjoy blanket immunity from suit outside the litigation context, the Dezzanis' complaint should not have been dismissed with prejudice at this stage of the proceedings. I therefore respectfully dissent.

_____ *Pickering* ____, J.
Pickering

Supreme Court
OF
Nevada

(O) 1947A